Case No. 24-1340

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

ETHAN WEST-HELMLE
Plaintiff-Appellant,

vs.

DENVER DISTRICT ATTORNEY'S OFFICE, et al.
Defendants-Appellees.

On Appeal from the United States District Court, District of Colorado
The Honorable Judge Raymond P. Moore
District Court No. 19-cv-02304-RM-STV

## APPELLEES THE UNIVERSITY OF DENVER, VIVA MOFFAT, AND
## ALEXI FREEMAN'S RESPONSE BRIEF

### ORAL ARGUMENT IS NOT REQUESTED

Jim Goh
E. Rayner Mangum
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
1801 Broadway, Suite 529
Denver, CO 80202
Telephone: 720.343.7570
Facsimile: 720.343.7573
**ATTORNEYS FOR APPELLEES
UNIVERSITY OF DENVER, VIVA
MOFFAT, AND ALEXI FREEMAN**

## CORPORATE DISCLOSURE STATEMENT

The University of Denver ("DU") is a not-for-profit corporation. No publicly held corporation owns 10% or more of DU's stock. Appellees Viva Moffat and Alexi Freeman are individuals to whom Rule 26.1 of the Federal Rules of Appellate Procedure and Tenth Circuit Rule 26.1 do not apply.

# TABLE OF CONTENTS

I.      STATEMENT OF RELATED CASES………………………..………………1

II.     STATEMENT OF THE CASE……………………………………..………..1

III.    STATEMENT OF RELEVANT FACTS…………………………..………..3

IV.     PROCEDURAL HISTORY………………………………………………...11

V.      SUMMARY OF THE ARGUMENT…………………………………….....13

VI.     ARGUMENT…………………………………………………………..……15

   A.  West-Helmle Abandoned His Theories of Discrimination and Failure-to-Accommodate Under the Rehabilitation Act……………………….…..15

   B.  The District Court Correctly Dismissed West-Helmle's Civil Conspiracy Claim Against Professor Moffat and Professor Freeman……………………………………………………………….…...21

   C.  Judge Moore Properly Denied West-Helmle's Motions for Recusal…………………………………………………………………....24

   D.  Judge Moore Correctly Struck West-Helmle's Filings, Granted DU's Motion for Summary Judgment, and Imposed Sanctions Against West-Helmle…………………………………………………………………...28

      1.  Judge Moore Did Not Abuse his Discretion by Striking Portions of West-Helmle's Response to DU's Motion for Summary Judgment……………………………………………………………….29

      2.  Judge Moore Order Granting DU's Motion for Summary Judgment Was Proper……………………………………………………….…….31

      3.  Judge Moore's Order Imposing Sanctions Against West-Helmle Was Not an Abuse of Discretion…………………………………………39

VII.    CONCLUSION…………………………………………………………….44

VIII.   STATEMENT REGARDING ORAL ARGUMENT...………………………45

CERTIFICATE OF COMPLIANCE……………………………………………....47

CERTIFICATE OF PRIVACY REDACTIONS PURSUANT TO 10TH CIR. R. 25.5…………………………………………………………………………48

CERTIFICATE REGARDING HARD COPIES OF BRIEF……………………………………………………………………....49

CERTIFICATE OF VIRUS SCAN………………………………………...50

CERTIFICATE OF SERVICE………………………………………..…51

Rule 28.2 Attachments

Docket Entries………………………………………………………...…..1

Dkt 84 Recommendation of United States Magistrate Judge re Motions to Dismiss [62, 64, 65, 68]...………….…………………………………………….....43

Dkt. 90 Judge Raymond P. Moore's Order re Recommendation [84]…………….…..96

Dkt. 131 Recommendation of United States Magistrate Judge re Motions to Dismiss [109, 111, 113, 114]……..…………………………………...................103

Dkt. 139 Judge Raymond P. Moore's Order re Recommendation [131]…..………..…140

Dkt. 205 Recommendation of United States Magistrate Judge re Plaintiff's Motion to Amend Third Amended Complaint and Join Melissa Trollinger Annis [176]…………………………………………………………….........151

Dkt. 218 Judge Raymond P. Moore's Order re Recommendation [205]........................160

Dkt. 272 Judge Raymond P. Moore's Minute Order re Plaintiff's Motion for Recusal and Reconsideration [271]......………………………………………..…166

Dkt. 274 Judge Raymond P. Moore's Order re Plaintiff's Motion for Recusal and Reconsideration [271]..………………………………………..………168

Dkt. 321 Judge Raymond P. Moore's Order re Plaintiff's Notice to Withdraw Objections [313]…..……………………………………….…………………170

iv

Dkt. 363 Judge Raymond P. Moore's Order Granting Plaintiff's Motion for Leave to Exceed Page Limit and Postpone the Due Date for Response to Summary Judgment [362]...……………………………………………………………………172

Dkt. 371 Judge Raymond P. Moore's Order re Plaintiff's Motion for Extension [362] and Striking Pages of Plaintiff's Response [368]...……………………………………..........174

Dkt. 373 Judge Raymond P. Moore's Order re Plaintiff's Objections [372]……...…….176

Dkt. 377 Judge Raymond P. Moore's Order re Plaintiff's Motion for Recusal of Judge Raymond P. Moore [376]…………………………………………........................178

Dkt. 380 Judge Raymond P. Moore's Order re Plaintiff's Objection [379]…….............180

Dkt. 383 Judge Raymond P. Moore's Order re Defendant's Motion for Summary Judgment [358] and Defendant's Motion for Sanctions [286]…………………..............182

Dkt. 384 Final Judgment in Favor of Defendant, University of Denver and Awarding Sanctions…………………………………………………..............................206

Dkt. 399 Final Judgment in Favor of Defendant, Thomas Russel…………..………....207

Dkt. 400 Final Judgment in Favor of Defendant Denver County Judiciary…………....208

Dkt. 412 Final Judgment in Favor of Defendant Denver District Attorney's Office……………………………………………………………………………209

# TABLE OF AUTHORITIES

## CASES

*Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 704 (10th Cir. 2014)..............................................................................................................24

*Anderson v. Humana, Inc.*, 1994 WL 416148, at *1, n.3 (10th Cir. 1994) ......................14

*Armstrong v. Bailey*, 101 F. App'x 780, 781 (10th Cir. 2004).........................................28

*Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ...............................................................................................................................24

*Bird v. Regents of New Mexico State Univ.*, 619 F. App'x 733, 748 (10th Cir. 2015)27, 32

*Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987)..............................................45

*Bustillo v. Hawk*, 44 F. App'x 396, 400 (10th Cir. 2002) ..........................................29, 31

*Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010)..........................................22

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) ....................................................40

*Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 157 (3d Cir. 2021) ............................16

*Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F. App'x 909, 919 (10th Cir. 2013)..............................................................................................................................19

*Dallas v. Craft*, 2022 WL 2079312, at *8, n.3 (E.D. Va. June 9, 2022)..........................23

*Davila v. Qwest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004) .....................................37

*Dewitt v. Sw. Bell Tell. Co.*, 845 F.3d 1299, 1316 (10th Cir. 2017) ....................36, 37, 38

*E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1037–38 (10th Cir. 2011).....................19

*Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 992-93 (10th Cir. 2021) ...............18

*Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015) ..................40

*Glapion v. Castro*, 646 F. App'x 668, 670 (10th Cir. 2016)............................................20

*Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008)......................35

*Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987) ...............................................25, 28

*In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199 (10th Cir. 2000)...................................22

*In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1026 (10th Cir. 2017) .............45

*Jones v. UPS, Inc.,* 502 F.3d 1176, 1195 (10th Cir. 2007).................................................35

*Lail v. Apfel*, 1999 WL 147305, at *2 (10th Cir. Mar. 18, 1999).....................................38

*Libretti v. Courtney*, 633 F. App'x 698, 698, n.1 (10th Cir. 2016)...................................14

*Lipin v. Wisehart*, 760 F. App'x 626, 637 (10th Cir. 2019)..............................................45

*Liteky v. United States*, 510 U.S. 540, 555 (1994) ...........................................................26

*Mellott v. MSN Commc'ns, Inc.*, 513 F. App'x 753, 754 (10th Cir. 2013) .......................44

*Moen v. Earl,* 82 F.3d 426 (10th Cir. 1996) .....................................................................20

*Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002) .............
.........……………………………………………………………………...............15, 23

*Murrell v. Shalala,* 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) ....................................16, 25

*N. Am. Ins. Agency, Inc. v. Bates*, 2013 WL 6150781, at *3 (W.D. Okla. Nov. 22, 2013)
.............................................................................................................................23

*O'Connor v. City & Cnty. of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990)..................18

*Overton v. United States*, 44 F. App'x 932, 934 (10th Cir. 2002) ....................................25

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180-81 (10th Cir. 2015)
.............................................................................................................................23

*Profita v. Regents of the Univ. of Colorado*, 709 F. App'x 917, 918, 920-21 (10th Cir.
2017)...................................................................................................................37

*Rangel v. Sanofi Aventis U.S., LLC*, 507 Fed. App'x. 786, 791 (10th Cir. Jan. 14, 2013)35

*Sigmon v. CommunityCare HMO, Inc.,* 234 F.3d 1121, 1124 (10th Cir. 2000) ..............32

*State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1581-82 (Fed. Cir. 1991).......45

*Stover v. Martinez*, 382 F.3d 1064, 1070-71 (10th Cir. 2004) .........................................39

*The Sherwin-Williams Co. v. SUSE, LLC*, 2015 WL 10990185, at *5 (D. Utah Oct. 23, 2015)..................................................................................................23

*United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272-73 (10th Cir. 2007)................22

*Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999).........................................22

*Vizcarrondo-Gonzalez v. Vilsack*, 2024 WL 3221162, at *6 (1st Cir. June 28, 2024) .... 16, 25, 29, 31, 40

*Wheeler v. Comm'r*, 521 F.3d 1289, 1291-92 (10th Cir. 2008).........................................45

*Winston v. Ross,* 725 F. App'x 659, 664 (10th Cir. 2018)..................................19

*Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995) ...........................32

## STATUTES

28 U.S.C. § 144 ......................................................................................25

28 U.S.C. § 455 ......................................................................................25

## OTHER AUTHORITIES

Wright & Miller, § 1361 Timing of Rule 12(b) Motions, 5C Fed. Prac. & Proc. Civ. § 1361 (3d ed.) ......................................................................................23

## RULES

Fed. R. App. P. 38 ......................................................................................45

Fed. R. Civ. P. 12......................................................................................21, 23, 24

Fed. R. Civ. P. 56(c) ......................................................................................32

Fed. R. Civ. P. 7......................................................................................23

# I. STATEMENT OF RELATED CASES

Appellant Ethan West-Helmle ("West-Helmle") has filed a second appeal in the Tenth Circuit (Appellate Case No. 25-1020) pertaining to: (1) the District Court's award of attorney's fees to Appellee Thomas Russell; and (2) Appellee the University of Denver's ("DU's") Bill of Costs, which remains pending before the District Court.

# II. STATEMENT OF THE CASE

This case centers on a grade of "No Pass" that West-Helmle received for an externship that he took with the Denver District Attorney's Office (the "DA's Office") in Fall 2017 while attending DU's Sturm College of Law. It is undisputed that the externship did not go well. Indeed, not long after the semester began, the DA's Office submitted a mid-semester review for West-Helmle, which documented a multitude of issues with West-Helmle's behavior and performance, including his poor attitude and the fact that he was blaming others for the mistakes he was making. The DA's Office noted that they had concerns about whether he would be able to adopt the appropriate attitude to be successful in this line of work.

After the DA's Office furnished this negative mid-semester review, the situation deteriorated even further. West-Helmle was barred from the courtroom, and ultimately fired from his externship by the DA's Office. The DA's Office subsequently submitted a Final Evaluation for West-Helmle to DU, in which the DA's Office again documented numerous issues with his performance and conduct, including his unprofessional behavior,

his refusal to accept responsibility for his own mistakes, and the fact that he had been asked not to return to the courtroom. The DA's Office stated that they could not "in good conscience" recommend that he pass the externship.

In light of the recommendation from the DA's Office and the seriousness of the issues that the DA's Office documented with West-Helmle's performance and behavior, DU assigned West-Helmle a grade of "No Pass" for the externship. After the externship had ended, West-Helmle expressed his disagreement with his externship supervisors' negative assessment of his performance as well as their rationale for firing him. Similarly, after the DA's Office had fired him, West-Helmle asked DU to give him a passing grade despite his admitted inadequate performance and unprofessional behavior. In requesting this retroactive lenience from DU, West-Helmle alluded to a stroke that he had suffered some time ago. DU upheld the decision to assign him the grade of "No Pass."

West-Helmle subsequently filed suit in the United States District Court for the District of Colorado, essentially seeking to use litigation to "punish" DU and the other Defendants for his own failures as an extern. While he originally asserted a multitude of claims and theories, after many years of litigation, his sole remaining theory against DU was a claim of retaliation under the Rehabilitation Act. Throughout the course of the five and a half years that this case has been pending, West-Helmle has continually engaged in unprofessional and abusive behavior, not dissimilar to that which the DA's Office documented in recommending that he fail his externship. This has included West-Helmle persisting in making shockingly disrespectful, false, and inappropriate attacks upon Magistrate Judge Varholak, the Honorable Judge Moore, and defense counsel despite

receiving multiple admonishments from the Court, as well as his relentless filing of groundless motions in which he continually advanced nonsensical arguments that the Court had already rejected.

DU moved for summary judgment on West-Helmle's sole remaining retaliation theory, asserting that he could not establish a single element of his prima facie case of retaliation and that he also could not establish that DU's legitimate, non-retaliatory reasons for the challenged actions pertaining to his externship were pretextual. The District Court properly applied this Court's well-settled precedent and granted DU's Motion for Summary Judgment. In the same Order, the District Court also granted DU's Motion for Sanctions, finding that West-Helmle's behavior during the litigation "r[ose] to a level the Court has rarely seen." This Court should affirm the District Court's decision.

### III.    STATEMENT OF RELEVANT FACTS

West-Helmle enrolled in the University of Denver's Sturm College of Law in the summer of 2015. *E.g.,* ROA, Vol. V at 66, at 35:17-20; ROA, Vol. II at 130, ¶11.  In December of 2016, West-Helmle had a stroke. *E.g.,* ROA, Vol. V at 73, at 60:5-7; ROA, Vol. II at 130, ¶12. He did not request any accommodations from DU in connection with his stroke until February of 2018 when he did so in anticipation of taking the bar exam. *See, e.g.,* ROA, Vol. VI at 90, ¶6; ROA, Vol. V at 83-85, at 73:2-15, 74:15-75:5.

For externships at the law school, students perform work at outside entities (such as district attorney's offices) in exchange for credit hours. *E.g.,* ROA, Vol. V at 184, 186. Students are directly supervised at their externship placement by an externship supervisor who submits a mid-semester and a final evaluation for the extern and recommends whether

the extern should receive a passing or failing grade. *See, e.g.*, *id.*, at 186, 192-194. Students also have a faculty externship supervisor at DU. *Id.*, at 185. Professor Alexi Freeman was West-Helmle's faculty externship supervisor at DU. *E.g.,* ROA, Vol. V at 70, at 48:6-11.

West-Helmle enrolled in an externship for the summer of 2017 with the Adams County District Attorney's Office. ROA, Vol. II, at 3. West-Helmle alleges that he told Professor Freeman during the summer of 2017 that he had previously suffered from a stroke and that she subsequently assigned him a passing grade for the Adams County externship. ROA, Vol. V at 72-76, at 59:20-60:3, 61:23-63:15; ROA, Vol. V at 206; ROA, Vol. V at 70-71, at 48:1-18.

In the fall of 2017, West-Helmle enrolled in a second externship, this time with the Denver DA's Office. *See* ROA, Vol. II at 131, ¶17, 20. He applied for the externship through Judge Mix's diversity externship program. *See, e.g.,* ROA, Vol. V at 76-77, at 63:16-64:13. In his application essay for the diversity program, West-Helmle disclosed being a member of the LGBTQ community as the basis for qualifying as diverse, ROA, Vol. V at 207, and did not reference having a disability. *Id.* West-Helmle's duties at the Denver DA's Office included working on plea deals for Courtroom 4C over which Magistrate Annis presided. *E.g.*, ROA, Vol. V at 208; ROA, Vol. II, at 137, ¶60.

Christine Washburn was West-Helmle's externship supervisor at the Denver District Attorney's Office. *E.g.,* ROA, Vol. V at 208; ROA, Vol. V at 234-235, at 39:12-40:10. West-Helmle also worked with other district attorneys, including Dustin Heard and Ashley Morgan. *See, e.g.,* ROA, Vol. V at 234-237, at 39:12-42:7; ROA, Vol. V at 78-80, at 65:10-25, 66:1-67:25.

DU's 2017 externship policies for "repeat" students who, like West-Helmle, had previously taken an externship provided: "In addition to completing the required written assignments, "your Supervisor in the field of course must also indicate a grade of Pass in order to pass the externship fieldwork." ROA, Vol. V at 186. The policies further state: "If the Supervisor indicates a grade of Fail, in addition to earning 0 points [for the Externship Final Evaluation], you are likely to fail the externship credit." ROA, Vol. V at 194; *see also* ROA, Vol. V at 119-125, at 218:9-224:6. For students with disabilities, the policies provided that the student should work with DU's Disability Services Program (which manages requests by students for accommodations) and also contact the externship office if they had any challenges pertaining to a disability during the externship placement. ROA, Vol. V at 194.

On September 25, 2017, West-Helmle received his mid-semester evaluation from the Denver District Attorney's Office. The evaluation was not favorable and highlighted West-Helmle's "poor attitude," "tend[ency] to blame others for the errors or issues he is responsible for," and defensiveness. ROA, Vol. V at 211-212. The DA's Office further stated that there were concerns about whether West-Helmle would "be able to adopt the appropriate attitude to be successful in this line of work." ROA, Vol. V at 212.

The self-evaluation that West-Helmle provided as part of the same mid-semester evaluation process stated that the negative feedback he had been receiving was "unfair and WRONG," and blamed Magistrate Annis for her alleged "erratic courtroom attitude." ROA, Vol. V at 208-210. After the mid-semester evaluation, West-Helmle had a conversation with Ms. Washburn, in which he stated that Magistrate Annis was

unreasonable and "crazy." ROA, Vol. VI at 97, ¶¶23, 24. He noted that his statements did not go over well with Ms. Washburn and that she thought he had a "terrible attitude." *Id.*

On or around October 20, 2017, Dustin Heard informed West-Helmle that West-Helmle was banned from Courtroom 4C. ROA, Vol. II at 137, ¶60; *see also* ROA, Vol. V at 133-134, at 256:11-257:13. A few days later, Mr. Heard and Ms. Morgan told West-Helmle that he was fired from the externship, citing significant errors that West-Helmle had made in connection with the plea deals he made and stating that West-Helmle "was not right to work with them." ROA, Vol. II at 138, ¶68; ROA, Vol. VI at 97-98, ¶26; *see also* ROA, Vol. V at 262-272.

The following day West-Helmle emailed Professor Freeman, asking:

"Who is currently running the internship program in Colo. Springs? . . . I want to make sure I get to the correct people.  Also, is there any sort of complaint form that I should fill out in order to properly punish Dustin, Christine and Ashley in Denver. I know that I am the first person that has been fired since a guy that gave his badge to a cop when stopped for speeding. I know Dustin was very excited to be there when I was fired but without good cause. I am just a student that was accepted to the office through Judge Mix's program for placement of diverse students."

ROA, Vol. V at 254.

Professor Freeman responded:

"In terms of a complaint form, there's no official process through my office beyond what you've already done. I've talked with them given everything that's gone on and also plan to visit. I would, if possible, encourage you to move away from the idea of punishing them because I think that it will end up potentially hurting you more. However, it is certainly you[r] right to send a letter to the DA office if you want. I'm just not sure it's going to get the goals you want to achieve and instead could impact your reputation more than just moving along and seeking out other offices. Let me know what happens with the spring options; I think we focus on the future and leave this semester behind."

ROA, Vol. V at 254.

West-Helmle subsequently pursued an externship with the District Attorney's Office in Colorado Springs for the following term. ROA, Vol. VI at 99-100, ¶31. He did not receive the position because he had a prior felony conviction. *Id.*; ROA, Vol. V at 145-146, at 294:6-295:4. West-Helmle also applied for a position with the Jefferson County District Attorney's Office but was not selected for the position. ROA, Vol. V at 260-261.

In November of 2017, Professor Freeman was notified by the DA's Office that, despite their requests, West-Helmle was refusing to return the DA's Office's security badge even after his externship had ended. ROA, Vol. VI at 100, ¶32. She contacted West-Helmle to ask him to return it. West-Helmle responded that he had requested that the DA's Office "show [him] the document [he] signed saying [he] would return the ID card," stating that he would return the badge only if the DA's Office sent him "a letter of apology for his stent [sic] in Denver[] IF THEY FEEL REGRETFUL IN ANY WAY – FOR ANYTHING." ROA, Vol. V at 258-259. After further communications, West-Helmle eventually returned the badge. ROA, Vol. VI, at 101, ¶35.

The Denver District Attorney's Office submitted a Final Evaluation for West-Helmle on December 3, 2017, recommending that West-Helmle receive a failing grade. ROA, Vol. VI at 102-103, ¶38. The Evaluation noted West-Helmle's "lack of judgment," "overall negative attitude and refusal to take responsibility for his own mistakes," the fact that he had been asked not to return to the courtroom, and the fact that he had refused to return the security badge. The DA's Office concluded: "I cannot in good conscience

recommend a passing grade under the totality of the circumstances." ROA, Vol. V at 262-272. West-Helmle submitted a self-evaluation that same day, rating himself a "2" out of "4" with respect to his ability to respond to criticism, and referring to the magistrate's "temper tantrums." ROA, Vol. VI at 103, ¶39.

In apparent recognition of the fact that DU's policies provided that he was likely to receive a failing grade for the externship given his supervisor's negative recommendation, West-Helmle emailed Professor Freeman on December 21, 2017 to provide "input on [his] failing grade." ROA, Vol. VI at 105, ¶43. He stated in his memorandum that "Dustin failed me for my overall negative attitude and my behavior in 4C. He is correct that . . . I did not take responsibility for the chaos which occurred in the courtroom." Additionally, he stated: "[P]lease remember the massive stroke I survived less than 1 year ago. I persevered to return to Sturm for my summer externship. My health issues, like my staph infection, affected my otherwise perfect attendance." ROA, Vol. V at 294-295.

Professor Freeman ultimately assigned West-Helmle a failing grade for his Fall 2017 externship, *E.g.,* ROA, Vol. V at 206; ROA, Vol. V at 292-293. She based her decision on the externship policies and the fact that West-Helmle's supervisors had recommended that he receive a failing grade, as well as the extensive and documented issues that West-Helmle's supervisors had with him throughout the externship, including his poor attitude, his refusal to accept responsibility for his mistakes, the fact that he had been barred from the courtroom, and the fact that he refused to return the security badge. *E.g.*, ROA, Vol. VI, at 108-109, ¶48.The "failing" grade she assigned was a grade of "No Pass," which meant that West-Helmle received no credit for the externship, but the

externship did not affect his GPA. *E.g.,* ROA, Vol. V at 206; ROA, Vol. V at 139, at 274:6-10; ROA, Vol. 5, at 286-287.

Given that West-Helmle received a No Pass grade in the externship, he was not permitted to take additional externships at DU. ROA, Vol. V at 286-287; *see also* ROA, Vol. V at 244-245, at 309:13-310:3; ROA, Vol. V at 289, at 114:4-20. West-Helmle was still free to pursue internships with legal employers (where he would receive pay rather than credit hours for his work), as well as perform volunteer work. ROA, Vol. V at 327, ¶5; *see also* ROA, Vol. V at 143-144, at 292:12-293:4.

While West-Helmle raised disagreements with his externship supervisor's assessment of his performance and his failing grade, he concedes that at no point in any communication with Professor Freeman did he ever allege that he had suffered from discrimination during his externship. ROA, Vol. V at 106-107, at 180:17-181:3 ("[O]h I never told her that I was discriminated against. I never used those words."); ROA, Vol. V at 126-127, at 242:11-243:21; ROA, Vol. VI at 110, ¶49.

West-Helmle subsequently submitted a grade appeal to DU's Examinations, Standing, and Readmission Committee (the "Committee"), which Professor Thomas Russell chaired, *E.g.,* ROA, Vol. IV at 574, 577, ¶19; ROA, Vol. V, at 304-306. In his grade appeal, West-Helmle asked that the Committee change his grade from a No Pass to Pass and alleged that his grade "was based on invalid and inappropriate criteria." ROA, Vol. V at 304-320. In response to a set of questions that the Committee posed to West-Helmle, he stated: "As you know, I had a massive stroke 8 months prior to beginning work at the Denver DA's office. . . . The Denver DA's Office and Magistrate Annis as well as

Ms. Freeman knew of my stroke, and I was not afforded any special accommodations by anyone involved in this matter." ROA, Vol. V at 359; ROA, Vol. VI, at 117, ¶¶63-64.

On May 18, 2018, Professor Russell sent a letter to West-Helmle on behalf of the Committee, stating that the Committee had rejected West-Helmle's appeal to change his grade for the Fall 2017 externship, stating: "As committee chair, I sense that your goal is to punish the District Attorney's office for your own failures within that office. I will not permit my Committee to serve this function for you." ROA, Vol. V at 324-326.

West-Helmle graduated from law school at the end of the fall term in 2018. *E.g.,* ROA, Vol. V at 206; ROA, Vol. VI, at 122, ¶75. He took the Uniform Bar Exam and received a score which he testified is considered passing in only the state of Minnesota. ROA, Vol. VI, at 121, ¶73. West-Helmle applied for a license to practice law in Minnesota, but his application was denied due to the Board of Minnesota Law Examiners' ("the Minnesota Board") finding that he had failed to meet his burden of proof to show good character and fitness to practice law. Indeed, the Minnesota Board issued a 64-paged determination supporting their denial of West-Helmle's application, documenting West-Helmle's egregious "pattern of misconduct, false statements, and misrepresentations" to the Minnesota Board, as well as his lengthy history of violating the law and engaging in dishonest behavior. *See* ROA, Vol. V at 376-440; ROA, Vol. VI, at 124, ¶78. Specifically, they noted that West-Helmle: (1) failed to disclose at least three incidents where he was cited for violations of the law; (2) failed to provide records that the Minnesota Board requested pertaining to a judgment that the California Employment Development Department obtained against him after finding that he engaged in fraud, misrepresentation,

or willful nondisclosure in obtaining benefits overpayment; (3) failed to disclose at least two incidents in which he failed to pay taxes; (4) falsely described the facts underlying his felony drug conviction when applying to law school; (5) failed to disclose that he had been fired from the Fall 2017 externship at the DA's Office; and (6) failed to disclose at least *seven* legal proceedings to which he was a party. ROA, Vol. V at 377-379, 380-383, 386-395, 398-401, 411-412, 420-422, 439.

## IV. <u>PROCEDURAL HISTORY</u>

West-Helmle filed his Complaint in this case on August 13, 2019 and asserted a multitude of claims against the Denver DA's Office, the Denver County Judiciary (the "DCJ"), DU, Dustin Heard, Christine Washburn, Jessie Dubois, Magistrate Mellissa Trollinger Annis, Thomas Russell, Viva Moffat, and Alexi Freeman. ROA, Vol. I at 45-69. In the initial Complaint, West-Helmle asserted eight causes of action against DU, Professor Moffat, and Professor Freeman (collectively "the DU Appellees"). ROA, Vol. I at 58-67. He subsequently amended his complaint several times following multiple rounds of the defendants filing motions to dismiss, which were granted in large part by the District Court. *See, e.g.,* Supp. App., at 43-45; ROA, Vol. I at 70-95; ROA, Vol. I at 293-321; ROA, Vol. I at 389-390; ROA, Vol. I at 391-416; ROA, Vol. I at 766-818; ROA, Vol. I at 859-865; ROA, Vol. II at 126-127. In November of 2020, West-Helmle submitted a Third Amended Complaint. ROA, Vol. II at 144-152. With respect to the DU Appellees, West-Helmle asserted claims of: (1) a violation of the Rehabilitation Act; (2) breach of contract; and (3) civil conspiracy. ROA, Vol. II at 128-151. The DU Appellees submitted a Partial Motion to Dismiss seeking the dismissal of West-Helmle's conspiracy and breach of

contract claims. *See* ROA, Vol. II, at 288-297. The Denver District Attorney's Office and the Denver County Judiciary also filed motions to dismiss that included seeking the dismissal of West-Helmle's ADA and Rehabilitation Act claims against them. ROA, Vol. II at 153-172; ROA, Vol. II at 242-253.

Magistrate Judge Varholak recommended granting DU's Partial Motion to Dismiss and also granting the majority of the other Defendants' motions to dismiss. ROA, Vol. II at 522-558. West-Helmle submitted an Objection to Magistrate Judge Varholak's Recommendation in which he objected to only the dismissal of a portion of his disability-related claims, stating that he agreed with the dismissal of his conspiracy and breach of contract claims. ROA, Vol. II at 559-573. Judge Moore adopted the Recommendation, leaving West-Helmle with only ADA and Rehabilitation Act retaliation claims against the DCJ and a Rehabilitation Act claim against DU. ROA, Vol. II at 686-696.

Following the Court's ruling on the Motions to Dismiss, West-Helmle confirmed that he was proceeding with only a claim of retaliation under the Rehabilitation Act against DU. *E.g.,* ROA, Vol. V, at 65, 108-109. DU moved for summary judgment as to that sole remaining claim on May 3, 2024. ROA, Vol. V at 7-30. In connection with his Response to DU's Motion for Summary Judgment ("Response"), West-Helmle requested both a page extension and an extension of time within which to submit his Response. Supp. App., at 99-101. While the District Court granted both of West-Helmle's extension requests, (ROA, Vol. V at 449-450), West-Helmle ultimately submitted a Response that vastly exceeded the extended page limit the District Court had given him, and he also failed to submit any response to DU's Statement of Undisputed Material Facts. ROA, Vol. V, at 478-533; *see*

*also* ROA, Vol. V at 2116-2118. The District Court accordingly struck the pages of West-Helmle's Response which exceeded the extended page limit, and further ruled that West-Helmle was not permitted to submit an untimely response to DU's Statement of Undisputed Material Facts, which rendered DU's Statement of Undisputed Material Facts undisputed. ROA, Vol. V at 2119-2120. Subsequently, on August 12, 2024, the District Court granted DU's Motion for Summary Judgment and also granted DU's Motion for Sanctions against West-Helmle, awarding $5,000 in sanctions. ROA, Vol. VI at 224-247.

## V.    <u>SUMMARY OF THE ARGUMENT</u>

On appeal, West-Helmle purports to challenge a number of the District Court's rulings. This includes challenging: (1) the District Court's Order granting DU's Partial Motion to Dismiss; (2) the District Court's Orders Denying West-Helmle's Motions for Recusal; (3) the District Court's Order striking portions of West-Helmle's Response to DU's Motion for Summary Judgment; (4) the District Court's Order Granting DU's Motion for Summary Judgment; and (5) the District Court's Order granting DU's Motion for Sanctions.

As was true of his filings before the District Court, the arguments that West-Helmle seeks to advance on appeal are frivolous, underdeveloped, and entirely unsupported by any citation to caselaw. Further, the majority of West Helmle's appellate brief is nothing but regurgitated material from his prior filings in the District Court. Indeed, as DU noted in its Motion to Strike West-Helmle's Opening Brief, rather than developing substantive argument on appeal as this Court's rules require, West-Helmle instead merely copied and pasted into his Opening Brief over 20 pages of his filings before the District Court. Under

13

this Court's precedent, West-Helmle has waived these arguments on appeal by failing to adequately develop them in his Opening Brief.[1]

Separately, West-Helmle also waived many of the arguments that he now attempts to raise on appeal during proceedings before the District Court. For example, West-Helmle never objected to Magistrate Judge Varholak's Recommendation that West-Helmle's civil conspiracy claim against Professor Freeman and Professor Moffat be dismissed. To the contrary, he stated that he "agreed" with the recommended dismissal of that claim. Similarly, although West-Helmle states that he is challenging the District Court's dismissal of his failure-to-accommodate and discrimination theories, he abandoned those theories by affirmatively choosing to proceed exclusively under solely a retaliation theory as against DU.[2] His decision to raise these frivolous arguments on appeal after clearly waiving them before the District Court warrants the imposition of sanctions under Fed. R. App. 38.

West-Helmle's challenge to the District Court's ruling granting both DU's Motion for Summary Judgment and its Motion for Sanctions is equally unavailing. In large part, West-Helmle's arguments hinge upon his allegation that Judge Moore's orders were "void" because they were issued after West-Helmle submitted motions seeking Judge Moore's recusal. The Motions for Recusal that West-Helmle submitted, however, contained nothing

---

[1] Additionally, as detailed more fully below, the arguments that West-Helmle purports to raise are ones that, by his own actions and admissions, he is precluded from raising on appeal.

[2] While West-Helmle is proceeding pro se, he is a law school graduate. This Court does not construe the pleadings of a pro se appellant who, like West-Helmle, has graduated law school as liberally as the Court would with a typical pro se appellant. *See, e.g., Anderson v. Humana, Inc.*, 1994 WL 416148, at *1, n.3 (10th Cir. 1994) (unpublished); *see also Libretti v. Courtney*, 633 F. App'x 698, 698, n.1 (10th Cir. 2016) (unpublished).

but conclusory statements, speculation, and outlandish conspiracy theories, such as West-Helmle alleging that Judge Moore had already retired from the federal bench and that he was secretly conspiring with Magistrate Judge Varholak against West-Helmle. Despite Judge Moore explicitly rejecting these arguments, West-Helmle continued to seek Judge Moore's recusal and to file repeated motions advancing these nonsensical and already rejected arguments. Due to West-Helmle's vexatious filings, as well as his well-documented abhorrent behavior towards opposing counsel, Judge Moore properly granted DU's Motion for Sanctions and sanctioned West-Helmle $5,000. On appeal, West-Helmle makes no effort to defend his actions on which Judge Moore premised the imposition of sanctions and instead makes only the conclusory assertion that he was merely "countering the judge's possible wrongdoing" by relentlessly advancing patently frivolous arguments. The entirety of West-Helmle's meritless arguments should be rejected and Judge Moore's Orders should be affirmed.[3]

## VI.   ARGUMENT

### A. West-Helmle Abandoned His Theories of Discrimination and Failure-to-Accommodate Under the Rehabilitation Act.

West-Helmle appears to suggest that the District Court erred in dismissing his failure-to-accommodate and discrimination theories under the Rehabilitation Act.[4] *See* Opening Brief, at 13-18. This argument should be rejected because West-Helmle

---

[3] The first and fourth issues that West-Helmle raises on appeal do not pertain to the DU Appellees and are accordingly not addressed in this Response Brief. *See* Opening Brief, at 1.

[4] This Court reviews the District Court's decision on a motion to dismiss de novo. *E.g.*, *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002).

affirmatively disclaimed these theories as against DU during the course of litigation. Separately, he also failed to adequately develop this argument on appeal.

As an initial matter, the entirety of West-Helmle's Opening Brief addressing this argument consists of West-Helmle merely copying and pasting four pages of his brief before the District Court and then adding the conclusory, unsupported statement that the District Court "wrongfully dismissed" his discrimination and failure-to-accommodate theories. *See id.* His failure to adequately develop and present his arguments on appeal effectively waives them. *E.g., Vizcarrondo-Gonzalez v. Vilsack*, 2024 WL 3221162, at *6 (1st Cir. June 28, 2024) (finding that appellant who copied and pasted her district court brief waived her arguments on appeal) (unpublished); *see also Murrell v. Shalala,* 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) (citing with approval a case referencing the "settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"); *Conboy v. U.S. Small Bus. Admin.*, 992 F.3d 153, 157 (3d Cir. 2021) ("Counsel for [appellees] simply took the summary judgment section of his District Court brief and copied and pasted it into his appellate brief, with minor changes such as swapping 'Defendant' for 'Appellee.' . . . This is not proper appellate advocacy."). Additionally, as detailed below, even if these arguments had not been waived, they are entirely meritless.

While West-Helmle originally asserted a variety of theories and claims against a host of Defendants, West-Helmle declared after the District Court ruled on the various Defendants' Motions to Dismiss West-Helmle's Third Amended Complaint that he was proceeding as against DU with solely a single theory: retaliation under the Rehabilitation

Act.[5]  Indeed, West-Helmle expressly testified during his deposition that his case against DU exclusively pertained to a claim of retaliation. ROA, Vol. V, at 108-109 (Q: And so what is your specific theory here? You have talked about retaliation, but then you have also mentioned possible harassment or hostile work environment. What is the nature of your claim? A: The nature of my –the claim, as I am moving forward, is that . . . is that Thomas Russell retaliated against me, and Alexi Freeman retaliated against me—Thomas Russell retaliated against me because Alexi Freeman retaliated against me months before.");[6] *see also* ROA, App. VI, at 161, ¶4. (West-Helmle stating: "[t]his lawsuit stems from ADA Retaliation surrounding the wrongdoing of Magistrate [Annis]), the Denver District Attorney's Office, and the University of Denver, Sturm College of Law."). Similarly, in describing his claim against DU during the underlying summary judgment briefing, West-Helmle again stated that he "asserts a claim of Retaliation against Defendant University of Denver ("DU") pursuant to Section 504 of the Rehabilitation Act." ROA, Vol. V, at 478. The Court then issued its summary judgment ruling, stating that: "[a]fter nearly five years of litigation, [West-Helmle's] retaliation claim against Defendant is his only remaining claim." ROA, Vol. VI at 226-227; *see also* ROA, Vol. IV, at 602.

Given that West-Helmle affirmatively disclaimed proceeding under discrimination

---

[5] Specifically, after the District Court properly granted the DCJ's Motion to Dismiss on the grounds that West-Helmle had not plausibly pled that he was disabled under the law, West-Helmle declared that he was proceeding as against DU with only a claim of retaliation (which does not require establishing that he was disabled under the law). *See, e.g.*, ROA, Vol. II, at 689-691; ROA, Vol. II, at 537-543, n.14; ROA, Vol. V, at 108-109.

[6] West-Helmle has not pled plead a theory of hostile work environment against DU. *Compare* ROA Vol. II at 148, ¶139 *with* ROA Vol. II at 147, ¶¶135, 137.

or failure-to-accommodate theories against DU, his arguments pertaining to those theories being somehow "wrongfully dismissed" may not be raised on appeal. *E.g., O'Connor v. City & Cnty. of Denver*, 894 F.2d 1210, 1214 (10th Cir. 1990) ("[W]e will not consider claims abandoned in the district court.") (internal citation omitted).

Additionally, even if West-Helmle had not abandoned those theories (which he did), they would fail as a matter of law for the same reasons the District Court correctly found that West-Helmle's retaliation claim failed. *See, e.g.,* ROA, Vol. VI, at 84-86. With respect to a failure-to-accommodate claim, it is undisputed that West-Helmle never requested accommodations from DU in connection with his stroke and the externship.[7] *See, e.g.,* ROA, Vol. VI at 90, ¶6; ROA, Vol. VI at 232, 236-237 ("Nor has [West-Helmle] shown that he required any accommodation from Professor Freeman or even identified any specific limitations caused by his stroke. . . . [West-Helmle] has yet to identify any specific limitations caused by his stroke or to suggest any specific accommodations that could have been provided."). Given that requesting a reasonable accommodation is a prima facie element of a failure-to-accommodate claim, West-Helmle's failure to request an accommodation would be fatal to this claim. *E.g., Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 992-93 (10th Cir. 2021) (affirming the dismissal of a failure-to-accommodate claim where the employee never requested accommodations in connection with a disability).

---

[7] Judge Moore further correctly found that West-Helmle had not shown that any limitations he had were obvious. ROA, Vol. VI, at 236. West-Helmle has not challenged that ruling on appeal.

A discrimination theory would fail for similar reasons. In the absence of any direct evidence of discrimination (which West-Helmle has not offered in this case), the prima facie elements of a Rehabilitation Act discrimination claim are that the plaintiff: (1) is a disabled person as defined by the Rehabilitation Act; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job; and (3) suffered an adverse action by an employer "because of" that disability. *See E.E.O.C. v. C.R. England, Inc.,* 644 F.3d 1028, 1037–38 (10th Cir. 2011).[8] Similarly, the prima facie elements of a retaliation claim are that: (1) the plaintiff engaged in protected opposition to discrimination; (2) a reasonable employee would have found the challenged action materially adverse; and (3) there is a causal connection between the protected activity and the materially adverse action. *Winston v. Ross,* 725 F. App'x 659, 664 (10th Cir. 2018). Thus, both claims require the plaintiff to show that he suffered an adverse action and that there is a causal connection between the adverse action and the protected class or activity. Likewise, under both claims, after the plaintiff has made the requisite prima facie showing, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its action. *Id.*; *E.E.O.C. v. C.R. England, Inc.,* 644 F.3d at 1037-38. If the defendant proffers such a reason, the burden then shifts back to the plaintiff to show that the defendant's stated reasons are merely pretextual. *Id.*

Here, the District Court correctly found that West-Helmle failed to establish:

---

[8] The same analysis is used for claims under the ADA and the Rehabilitation Act. *E.g.*, *Cunningham v. Univ. of New Mexico Bd. of Regents*, 531 F. App'x 909, 919 (10th Cir. 2013).

(1) that he had suffered any adverse actions, ROA, Vol. VI at 238-242; (2) a causal connection between any adverse actions and his alleged protected activity, *id.* at 242; and (3) any evidence to undermine the legitimate, non-discriminatory reasons that DU offered for the challenged actions to establish pretext, *id.*, at 242-244. On appeal, West-Helmle has not challenged the District Court's finding that he failed to establish a causal connection between his alleged protected activity and the challenged actions or the finding that he failed to establish any evidence of pretext. *See* Opening Brief. Further, as discussed in Section VI(D)(2) below, the cursory challenge West-Helmle raises on appeal to the finding that he failed to establish any adverse actions is entirely unavailing. *See* Opening Brief, at 35.

As such, even if West-Helmle had not abandoned his failure-to-accommodate and discrimination theories, these claims fail as a matter of law for the same reasons Judge Moore found that West-Helmle's retaliation claim failed. Accordingly, Judge Moore's decision granting DU's Motion for Summary Judgment and dismissing the case should be affirmed even in the absence of a finding that West-Helmle abandoned these theories. *E.g., Moen v. Earl,* 82 F.3d 426 (10th Cir. 1996) ("'[W]e are free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'") (citation omitted); *see also Glapion v. Castro*, 646 F. App'x 668, 670 (10th Cir. 2016) (affirming the dismissal of both discrimination and retaliation claims due to the plaintiff's failure to establish a causal connection and pretext).

**B. The District Court Correctly Dismissed West-Helmle's Civil Conspiracy Claim Against Professor Moffat and Professor Freeman.**

Next, West-Helmle argues that the District Court erred in dismissing his civil conspiracy claim against Professor Moffat and Professor Freeman because DU filed an Answer to earlier versions of West-Helmle's Complaint. Opening Brief, at 18-19. As detailed above, after multiple amendments, the final version of West-Helmle's Complaint was his Third Amended Complaint (ROA, Vol. II at 128-152), in which he pled a civil conspiracy claim against Professors Russell, Freeman, and Moffat. ROA, Vol. II at 150-151, ¶¶158-162. In response to the Third Amended Complaint, DU filed a Partial Motion to Dismiss (ROA, Vol. II, at 288-297), which sought, *inter alia*, the dismissal of West-Helmle's conspiracy claim against Professor Freeman and Professor Moffat pursuant to Fed. R. Civ. P. 12(b)(6).

Magistrate Judge Varholak recommended that the conspiracy claim be dismissed after concluding that West-Helmle failed to plead any unlawful overt acts by Professor Freeman or Professor Moffat and that the acts West-Helmle alleged to constitute the underlying wrong did not actually give rise to a cause of action. ROA, Vol. II, at 555-556. Magistrate Judge Varholak's ruling included a detailed explanation that West-Helmle's failure to make timely objections to the Recommendation might bar de novo review by the district court judge, as well as waive the right to appeal from a judgment of the district court based on the Recommendation. ROA, Vol. II, at 557-558, n.20. West-Helmle filed an Objection but stated that he was not objecting to the portion of the Recommendation as to the dismissal of the conspiracy claim and that he "*agree[d]* with the Court regarding the

dismissal of the breach of contract and conspiracy claims." ROA, Vol. II, at 559-560 (emphasis added). Judge Moore accordingly adopted the Recommendation and issued a ruling dismissing, *inter alia*, the conspiracy claim. ROA, Vol. II, at 689, 696.

It is well-established that the failure to object in a timely manner to a magistrate's recommendation waives appellate review of both factual and legal questions pertaining to the ruling. *E.g., In re Key Energy Res. Inc.*, 230 F.3d 1197, 1199 (10th Cir. 2000) ("'This court has adopted a 'firm waiver rule' which provides that a litigant's failure to file timely objections to a magistrate's [report and recommendation] waives appellate review of both the factual and legal determinations.'") (quoting *Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999)).[9] Here, not only did West-Helmle fail to object to the Recommendation as to the dismissal of his conspiracy claim, he stated that he affirmatively *agreed* with the claim being dismissed. ROA, Vol. II, at 559-560. He accordingly waived his right to challenge the dismissal of the claim and may not raise the issue on appeal. *E.g., In re Key Energy,* 230 F.3d at 1199; *see also United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272-73 (10th Cir. 2007) (stating that waiver bars the appeal of an invited error).

Additionally, even if West-Helmle's arguments pertaining to the dismissal of the

---

[9] The Court may decline to invoke the firm waiver rule in the interests of justice based upon an analysis of the following factors: (1) a pro se litigant's effort to comply; (2) the force and plausibility of the explanation for his failure to comply; and (3) the importance of the issues raised. *Casanova v. Ulibarri*, 595 F.3d 1120, 1123 (10th Cir. 2010). None of these factors is implicated here. As detailed more fully below, West-Helmle did not object to the dismissal of his conspiracy claim (despite Magistrate Judge Varholak expressly informing him of the consequences of failing to do so) with West-Helmle stating that he "agreed" with the claim being dismissed. Further, the issues West-Helmle raises on appeal in relation to the dismissal of the conspiracy claim are entirely groundless.

conspiracy claim had not been waived, they are meritless.[10] Under Fed. R. Civ. P. 12(h)(1), a defense based upon the failure to state a claim for which relief can be granted is not waived by its omission from an earlier motion to dismiss. Additionally, Fed. R. Civ. P. 12(h)(2) provides that a motion pursuant to Fed. R. Civ. P. 12(b)(6) may be raised in any pleading allowed or ordered under Rule 7(a), by a motion under Rule 12(c), or at trial.

It is well-settled that an amended complaint supersedes the original complaint, rendering the original complaint of no legal effect. *E.g., Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1180-81 (10th Cir. 2015). West-Helmle's filing of his Third Amended Complaint thus superseded his prior pleadings and required a new responsive pleading from DU pursuant to Rule 7. There was thus nothing improper about DU filing a Partial Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) in response to the Third Amended Complaint. *E.g., The Sherwin-Williams Co. v. SUSE, LLC*, 2015 WL 10990185, at *5 (D. Utah Oct. 23, 2015) ("[A] Rule 12(b)(6) motion to dismiss is not waived through a defendant's answer to a previous complaint . . .") (unpublished); *Dallas v. Craft*, 2022 WL 2079312, at *8, n.3 (E.D. Va. June 9, 2022) (same) (unpublished); *N. Am. Ins. Agency, Inc. v. Bates*, 2013 WL 6150781, at *3 (W.D. Okla. Nov. 22, 2013) (same) (unpublished); Wright & Miller, § 1361 Timing of Rule 12(b) Motions, 5C Fed. Prac. & Proc. Civ. § 1361 (3d ed.) (same).

Further, there can be no dispute that DU could have raised the same arguments in a motion under Fed. R. Civ. P. 12(c), and that a motion pursuant to Fed. R. Civ. P. 12(c)

---

[10] As detailed in Section VI(A) above, this Court reviews the District Court's decision on a motion to dismiss de novo. *Moffett*, 291 F.3d at 1231.

would have been decided under the same standard as the one the Court used in granting DU's motion under Fed. R. Civ. P. 12(b)(6).[11] *E.g.,* Fed. R. Civ. P. 12(h)(2)(B) (stating that: "[f]ailure to state a claim upon which relief can be granted . . . may be raised . . . by a motion under Rule 12(c)); *Atl. Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1160 (10th Cir. 2000) ("A motion for judgment on the pleadings under Rule 12(c) is treated as a motion to dismiss under Rule 12(b)(6)."); *Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty., Colo.*, 771 F.3d 697, 704 (10th Cir. 2014) (stating that "whether the district court dismissed the complaint based on a motion under Rule 12(b)(6) or Rule 12(c) makes no difference for purposes of our review. Therefore, any procedural error that may have been committed would be harmless and does not prevent us from reaching the merits of the district court's decision."). Having presented nothing more than this faulty procedural argument, West-Helmle's attempts to assail the dismissal of his civil conspiracy claim is meritless.

## C. Judge Moore Properly Denied West-Helmle's Motions for Recusal.

West-Helmle's arguments pertaining to Judge Moore's denial of his Motions for Recusal fare no better. Indeed, West-Helmle, once again, fails to raise any actual substantive arguments on appeal and instead simply reproduces pages of his briefs before the District Court and then tacks on the conclusory statement that Judge Moore erred in rejecting those arguments. Opening Brief, at 29-33. This is insufficient to present these

---

[11] The District Court indisputably accepted the well-pleaded factual allegations in West-Helmle's Third Amended Complaint as true and in the light most favorable to West-Helmle. *See* ROA, Vol. II, at 531; ROA, Vol. II, at 688.

issues for review on appeal. *See, e.g., Murrell*, 43 F.3d at 1390 n.2; *Vizcarrondo-Gonzalez*, 2024 WL 3221162, at \*6.

Additionally, even if these arguments were not waived by West-Helmle's failure to develop them in his Opening Brief (which they were), the arguments he raises are groundless and should be rejected by this Court. Indeed, the entirety of West-Helmle's assertion appears to be that Judge Moore erred by purportedly "ignoring" the affidavit that West-Helmle attached to his Motion for Recusal. *See* Opening Brief, at 29-33. This conclusory argument that Judge Moore somehow ignored West-Helmle's affidavit is meritless, unsupported, and should be rejected.

This Court reviews a District Court's ruling on a motion for recusal for abuse of discretion. *E.g., Overton v. United States*, 44 F. App'x 932, 934 (10th Cir. 2002). 28 U.S.C. § 144 provides that a judge should recuse himself if the party seeking recusal submits a "timely and sufficient affidavit" demonstrating that the judge has a personal bias or prejudice towards a party. An affidavit is deemed insufficient if it merely states conclusions, rumors, beliefs, or opinions; the affidavit must instead "state with required particularity the identifying facts of time, place, persons, occasion, and circumstances." *Hinman v. Rogers*, 831 F.2d 937, 939 (10th Cir. 1987). The party seeking recusal must allege "with required particularity the identifying facts of time, place, persons, occasion and circumstances." *Id*. Similarly, 28 U.S.C. § 455 provides that a judge should recuse themself if the judge has a personal bias or prejudice towards a party, or if the judge's "impartiality might reasonably be questioned." 28 U.S.C. § 455(a); 28 U.S.C. § 455(b)(1). It is well-settled that mere disagreement with an unfavorable ruling does not provide a

sufficient basis for judicial disqualification. *E.g., Liteky v. United States*, 510 U.S. 540, 555 (1994).

In his first Motion for Recusal, West-Helmle requested that Judge Moore recuse himself, alleging that Judge Moore had retired and that he was "influencing" Magistrate Judge Varholak's rulings for reasons West-Helmle never identified. *See* Supp. App., at 73-84 ("Judge Raymond P. Moore has convinced the Magistrate to recommend the unthinkable time and again to *pro se* Plaintiff West. . . . Judge Raymond P. Moore has been a terrible influence on the Magistrate's recommendations. . . ."). While West-Helmle attached an affidavit to the Motion for Recusal, the affidavit did not contain any allegations pertaining to Judge Moore. ROA, Vol. IV, at 14-22.[12] Judge Moore appropriately denied West-Helmle's Motion, stating in the ruling that Judge Moore had not retired and that West-Helmle's allegations that Judge Moore had influenced the magistrate's rulings were "in error." ROA, Vol. IV, at 69.

West-Helmle then submitted a Motion for Reconsideration of Judge Moore's Order denying the Motion for Recusal in which West- Helmle ignored Judge Moore's prior ruling and persisted in advancing the same already-rejected and nonsensical arguments that Judge Moore was retired and that he was improperly influencing Magistrate Judge Varholak's rulings. ROA, Vol. IV, at 74-81; ROA, Vol. IV, at 131-133, 145 (West-Helmle stating: "[r]etired Judge Raymond Moore (Mr. Moore) has acted subpar for a Federal Judge in this

---

[12] West-Helmle repeatedly argues that Judge Moore somehow ignored this affidavit (*see, e.g.,* Opening Brief, at 29-31, 33), but as noted above, West-Helmle did not include any allegations pertaining to Judge Moore and any alleged bias he may have in this affidavit. *See* ROA, Vol. IV at 14-22.

case, explicitly discriminating. . . . Mr. Moore's actions have hereforth enticed [defense counsel] to engage in wrongdoing in order to act in solidarity with Mr. Moore. . . . The mentally disabled have equal rights to the Court, and to justice, despite the ignorance of Mr. Moore. No more Mr. Moore.").[13] Despite the express language of Judge Moore's prior Order, West-Helmle continued to disrespectfully refer—both throughout this filing and in his filings for months afterwards—to Judge Moore as "retired," calling him "Raymond," "Mr. Moore," and "this retired old curmudgeon." ROA, Vol. IV at 132-133, 145; *see also* ROA, Vol. IV at 268-269.

Roughly eight months later, West-Helmle filed yet another Motion seeking Judge Moore's recusal shortly after Judge Moore issued a ruling with which West-Helmle disagreed. ROA, Vol. VI at 140-160; ROA, Vol. V at 2119-2120.West-Helmle attached an affidavit to this Motion for Recusal, which West-Helmle now alleges on appeal that Judge Moore "ignored." *See* Opening Brief, at 1, 6, 29-31, 33; ROA, Vol. VI, at 161-168. He offers no support for this baseless argument; nor is there any support for it in the record. *See id.* This conclusory argument should be rejected for that reason alone. *See Bird v. Regents of New Mexico State Univ.*, 619 F. App'x 733, 748 (10th Cir. 2015) (finding that the appellant's arguments which were conclusory, unsupported, and underdeveloped were waived and would not be considered).

Even more significantly, at no point in briefing this issue has West-Helmle *ever* identified the specific averments in his affidavit that he contends were sufficient to

---

[13] West-Helmle later withdrew this Motion. ROA, Vol. IV at 393-395; ROA, Vol. IV at 396-397.

establish grounds for Judge Moore's recusal. *See* Opening Brief, at 29-33. There are none. Indeed, the majority of the affidavit merely details a litany of Judge Moore's prior rulings with which West-Helmle disagreed. ROA, Vol. VI, at 161-168, ¶¶6, 10, 13-19, 22-23, 26, 30, 35-37, 39-41. It is well established that mere disagreement with a judge's ruling does not establish grounds for recusal. *E.g., Armstrong v. Bailey*, 101 F. App'x 780, 781 (10th Cir. 2004).

The remaining statements in West-Helmle's affidavit constitute nothing more than West-Helmle's unsupported, speculative, and conclusory assertions, such as "Judge Moore is acting on through personal bias in order to shut me up and close me down," ROA, Vol. VI, at 161-168, ¶¶8, 11, 20, 24, 31, 42. These statements are, again, insufficient to establish grounds for recusal. *E.g., Armstrong*, 101 F. App'x at 781; *Hinman*, 831 F.2d 939-40 ("A judge should not recuse himself on unsupported, irrational, or highly tenuous speculation."). In sum, neither West-Helmle's affidavit nor his Motions for Recusal contained any allegations that would establish grounds for Judge Moore to recuse himself. Judge Moore correctly denied these Motions, and this Court should reject West-Helmle's argument that Judge Moore's rulings following the Motions for Recusal were categorically void.

### D. Judge Moore Correctly Struck West-Helmle's Filings, Granted DU's Motion for Summary Judgment, and Imposed Sanctions Against West-Helmle.

West-Helmle next raises a number of challenges to Judge Moore's rulings pertaining to summary judgment. Specifically, West-Helmle challenges Judge Moore's decision to strike portions of West-Helmle's Response to DU's Motion for Summary

Judgment, Judge Moore's Order Granting DU's Motion for Summary Judgment, and Judge Moore's decision to impose sanctions against West-Helmle. None of West-Helmle's arguments has any merit.

1. **Judge Moore Did Not Abuse his Discretion by Striking Portions of West-Helmle's Response to DU's Motion for Summary Judgment.**

West-Helmle first appears to assert that Judge Moore erred by striking portions of West-Helmle's Response to DU's Motion for Summary Judgment ("Response"). *See* Opening Brief, at 33-34.[14] The entirety of his argument, however, consists of a single paragraph, which appears to have been copied and pasted from a brief before the District Court (which West-Helmle fails to identify)[15] in which he raises only unsupported, conclusory statements such as: "[i]gnoring the facts is an abuse of the *pro se* litigant." *See id.* As is true of so many of his other arguments, West-Helmle waived this issue by failing to adequately present and develop it on appeal. *E.g.*, *Vizcarrondo-Gonzalez*, 2024 WL 3221162, at *6. Additionally, this Court's precedent demonstrates that Judge Moore's ruling was sound and that he did not abuse his discretion by striking portions of West-Helmle's Response.

As detailed in Section IV above, in May of 2024, West-Helmle submitted a request to exceed the page limit for his Response, asking Judge Moore to permit him to file a Response of "28 pages total," and also grant him an extension of time until May 28, 2024

---

[14] This Court reviews the District Court's decision to strike a litigant's filings for an abuse of discretion. *See, e.g., Bustillo v. Hawk*, 44 F. App'x 396, 400 (10th Cir. 2002).

[15] The citation West-Helmle provided was to page 5 of Appendix 5, which is merely the docket for the case and does not contain the quotation West-Helmle detailed in his brief.

to file the Response. Supp. App., at 99-101. Judge Moore granted the Motion. ROA, Vol. V, at 449-450. On May 28, 2024, West-Helmle then submitted a 56-page Response (fully twice the pages that Judge Moore had granted him) and failed to submit a response to DU's Statement of Undisputed Material Facts.[16] ROA, Vol. V, at 478-533. The next day, West-Helmle submitted a "Notice of Late Filing and Motion for Extension" in which he stated that he had "missed" DU's Statement of Undisputed Material Facts and purported to inform the Court that he would submit his response to DU's Statement of Undisputed Material Facts by that Friday. ROA, Vol. V, at 2116-2118. Judge Moore ruled that, consistent with his prior Order, he would accept only the first 28 pages of West-Helmle's Response and strike the remaining pages. ROA, Vol. V, at 2119-2120. Judge Moore also denied West-Helmle's belated Motion for Extension due to West-Helmle's failure to establish good cause for what would have been a second extension of time. *Id.* Accordingly, Judge Moore deemed DU's Statement of Undisputed Material Facts to be undisputed. *Id.*

Judge Moore did not abuse his discretion with these rulings. As detailed above, Judge Moore granted West-Helmle an extension of both the Court's page limitation, as well as the deadline for the Response. However, by submitting a 56-page brief that did not include the required response to DU's Statement of Undisputed Material Facts, West-Helmle blatantly failed to adhere to the District Court's extended page count or its extended deadline. It is well-established that pro se litigants are expected to comply with the District

---

[16] Pursuant to Judge Moore's Rules, the Statement of Undisputed Material Facts is provided in chart form in a separate docket filing from the summary judgment briefs. *E.g.,* ROA, Vol. VI, at 88-126.

Court's rules of procedure and that West-Helmle failed to do so with respect to his Response. *E.g., Bustillo v. Hawk*, 44 F. App'x 396, 400 (10th Cir. 2002) (finding no abuse of discretion in the district court's decision to strike a pro se litigant's 90-page response to the defendant's motion for summary judgment, explaining that: "[a] pro se litigant must comply with the rules of procedure, including local rules."). Accordingly, this Court should affirm Judge Moore's decision striking the pages of West-Helmle's Response that exceeded the page limitation and refusing to allow West-Helmle to submit an untimely response to DU's Statement of Undisputed Material Facts. *See id.*

### 2. Judge Moore Order Granting DU's Motion for Summary Judgment Was Proper.

Next, West-Helmle alleges that Judge Moore erred in granting DU's Motion for Summary Judgment. *See* Opening Brief, at 33-35. West-Helmle's arguments on appeal span only two and a half pages and consist, once again, almost entirely of copied and pasted portions of the briefs he previously submitted to the District Court. Opening Brief, at 33-35. These arguments are waived by virtue of West-Helmle's failure to specifically identify and substantiate the purported error in the District Court's ruling and to develop the arguments on appeal. *See, e.g., Vizcarrondo-Gonzalez*, 2024 WL 3221162, at *6.

Even if these copied and pasted arguments had been properly presented (which they were not), they do not establish that there was any error in Judge Moore's summary judgment ruling. Indeed, West-Helmle's argument appears to be that Judge Moore must have failed to consider the evidence and arguments that West-Helmle presented simply because Judge Moore ultimately ruled against him. *See* Opening Brief, at 33-35 ("Trial

Court took no part of Appellant's Argument into Consideration. . . . The confessions of Alexi Freeman was [sic] given no deference."). This argument is frivolous and completely unsupported by the record.[17] *See id.; see also Bird,* 619 F. App'x at, 748.

This Court reviews a District Court's summary judgment ruling de novo and applies the same legal standard used by the District Court under Fed. R. Civ. P. 56(c). *Sigmon v. CommunityCare HMO, Inc.,* 234 F.3d 1121, 1124 (10th Cir. 2000). Under Rule 56(c), summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." If there is no genuine issue of material fact, then the reviewing court must determine if the District Court correctly applied the law. *See Wolf v. Prudential Ins. Co. of Am.*, 50 F.3d 793, 796 (10th Cir. 1995).

West-Helmle first alleges that Judge Moore erred in granting DU's Motion for Summary Judgment because Judge Moore allegedly failed to consider "the admission of Magistrate Annis."[18] Opening Brief, at 33. In his summary judgment response, West-Helmle referenced the fact that Magistrate Annis had provided discovery responses in

---

[17] Nor is there any merit to West-Helmle's argument that Judge Moore "relie[d] on the same summary of relevant facts as he wrote in this holding at Motion to Dismiss." Opening Brief, at 33. Indeed, Judge Moore's ruling on the Motion to Dismiss did not even contain a summary of relevant facts, given that no party objected to Magistrate Judge Varholak's summary of the factual allegations. *Compare* ROA, Vol. II, at 688-689; ROA, Vol. II, at 522-530 *with* ROA, Vol. VI, at 224-227.

[18] West-Helmle similarly asserts that Judge Moore failed to give "deference" to "the confessions of Alexi Freeman." Opening Brief, at 33. West-Helmle failed to identify the so-called "confessions" of Professor Freeman at issue, *see id.,* and DU is accordingly unable to respond to this cursory, underdeveloped argument.

which she denied having "barred West-Helmle *indefinitely*" from the courtroom during West-Helmle's externship and stated that she did not hold West-Helmle in contempt. ROA, Vol. V, at 481-482 (emphasis added). Neither during summary judgment briefing nor in his Opening Brief did West-Helmle explain how these discovery responses support his retaliation claim against DU. *See id* (asserting that Magistrate Annis' denial "is in line with exoneration of Plaintiff for the contempt charge," despite the fact that DU did not allege that West-Helmle was held in contempt); Opening Brief, at 33 (stating only: "The admission of Magistrate Annis was not given any mention by this judge.").

As DU explained in its Reply Brief, any argument pertaining to Magistrate Annis' discovery responses is simply irrelevant. ROA, Vol. VI, at 83-84. West-Helmle readily admits (and even pled in all iterations of his complaint) that he was banned from the courtroom during his externship. *See* ROA, Vol. II at 137, ¶60; ROA, Vol. VI at 97, ¶25.[19] And it was the fact of his exclusion from the courtroom—a point readily conceded by West-Helmle—that DU relied upon as part of its decision to issue him the grade of No Pass. *See, e.g.,* ROA, Vol V, at 12-13, 22; ROA, Vol. VI at 97, 102, 108-09, ¶¶25, 38, 48. Whether West-Helmle was banned from the courtroom by the magistrate judge or his externship supervisor, or whether the ban was "indefinite" or for a specified duration, the fact is that West-Helmle was banned from the courtroom, subjected to a withering mid-semester and final evaluation, and then fired—factors that properly dictated his resulting grade of "No

---

[19] Notably, at times it has been West-Helmle himself who has represented that it was Magistrate Annis who excluded him from the courtroom. *See, e.g.,* ROA, Vol. I, at 262-263 (West-Helmle stating: "[Magistrate Annis] told Mr. Heard to ban me from her courtroom . . .").

Pass. In sum, it is not that Judge Moore failed to *consider* West-Helmle's argument pertaining to Magistrate Annis' discovery responses; it is that those discovery responses are irrelevant to West-Helmle's retaliation claim against DU.

Next, West-Helmle argues that Judge Moore incorrectly rejected three arguments that West-Helmle raised of having engaged in protected activity. Opening Brief, at 33-34. The first communication that West-Helmle identifies as purported protected activity is an email he sent to Professor Freeman after he had been fired from the externship in which he asked Professor Freeman if there was "any sort of complaint form" he could use to try to "punish" his externship supervisors. Opening Brief, at 34. In the email, he further stated that the DA's Office fired him without good cause and that he was "just a student that was accepted to the office through Judge Mix's program for placement of diverse students."[20] *See* Opening Brief, at 34; ROA, Vol. VI, at 98-99 at ¶29.

Judge Moore correctly held that this email did not constitute protected activity. In so ruling, he acknowledged that no "magic words" are required for a communication to constitute protected activity but that this Court has held that the plaintiff must still have conveyed a concern about a practice made unlawful under the statutory basis for the plaintiff's claim. ROA, Vol. VI at 231-233. Here, Judge Moore found that West-Helmle's email inquiry regarding a complaint form to exact retribution against the DA's Office did

---

[20] West-Helmle was accepted into Judge Mix's program for diverse students on the basis of being a member of the LGBTQ community—not because he disclosed a disability to DU or the DA's Office. ROA, Vol. VI, at 92, ¶13; ROA, Vol. V, at 207; *see also* ROA, Vol. V, at 2119 (deeming DU's Statement of Undisputed Material Facts undisputed due to West-Helmle's failure to submit a timely response).

not meet that requirement because West-Helmle "fail[ed] to tie this email to his opposition to unlawful discrimination," and because the email "lacks sufficient detail to qualify as protected activity for the purpose of stating a relation claim." ROA, Vol. VI at 233. Indeed, in the email at issue, West-Helmle never stated that he thought he had been discriminated against by the DA's Office on the basis of a protected class (here, his alleged disability); nor did he state that he was asking Professor Freeman how to submit a complaint regarding disability discrimination rather than merely a complaint about his disgruntlement with the DA's Office for firing him. Notably, West-Helmle testified that at no point in time (in this communication or in any other communications) did he ever tell Professor Freeman that he felt that he had been discriminated against. ROA, Vol. VI, at 110, ¶49; ROA, Vol. V at 106-107, at 180:17-181:3.

Judge Moore's rejection of this argument is consistent with well-established caselaw from this Court that complaints untethered to an allegation that the actions at issue were taken due to a protected characteristic (here, disability) do not qualify as protected activity. *E.g., Hinds v. Sprint/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008) ("Nowhere in either e-mail does [plaintiff] mention or even allude to age or age discrimination . . . General complaints about company management and one's own negative performance evaluation will not suffice."); *Rangel v. Sanofi Aventis U.S., LLC*, 507 Fed. App'x. 786, 791 (10th Cir. Jan. 14, 2013) (explaining that complaints that a supervisor gave unfair and harsh criticisms is not protected opposition); *see also Jones v. UPS, Inc.,* 502 F.3d 1176, 1195 (10th Cir. 2007) ("Unless an employer knows that an employee is engaging in protected activity, it cannot retaliate against that employee

*because* of the protected conduct, as required by statute.").

West-Helmle next alleges that Judge Moore incorrectly rejected his argument that a second email he sent to Professor Freeman <u>after</u> he had been fired qualifies as protected activity. *See* Opening Brief, at 34. In this email, which West-Helmle sent months after he was fired from the externship, he asked Professor Freeman not to fail him despite his acknowledgement that he engaged in misconduct during the externship and that his supervisors recommended that he fail. *See* ROA, Vol. V at 292-295; *see also* ROA, Vol. VI at 96-98, 102-103, 107 ¶¶23-24, 26, 38, 45. In asking Professor Freeman to simply overlook his misconduct and poor performance, he belatedly stated: "please remember the massive stroke I survived less than 1 year ago." ROA, Vol. V at 292-295.

Judge Moore again correctly found that this email did not constitute protected activity. West-Helmle's statements to Professor Freeman gave no indication that he was opposing conduct made unlawful under the Rehabilitation Act or any other statute; nor did he give any indication that he was seeking an accommodation that would allow him to perform the essential functions of the externship (which had already concluded months prior at the time this email was sent). *Id.*; ROA, Vol. VI at 235-237. Moreover, as Judge Moore aptly noted, this Court has held that neither the ADA nor the Rehabilitation Act requires employers to "accommodate" an employee's alleged disability by overlooking past misconduct, even if the plaintiff alleges that the misconduct resulted from the plaintiff's disability. ROA, Vol. VI at 236-237; *Dewitt v. Sw. Bell Tell. Co.,* 845 F.3d 1299, 1316 (10th Cir. 2017) (explaining that accommodations always operate *prospectively*).

West-Helmle's related argument that he engaged in protected activity by

referencing his stroke in a May 2018 communication with Professor Russell fails for the same reason. *See* Opening Brief, at 34-35. West-Helmle sent the communication at issue roughly seven months after he was fired from the externship, at the time that he was asking DU's Grade Appeal Committee (which Professor Russell chaired) to change his grade in the externship from "No Pass" to "Pass." *See* ROA, Vol. VI, at 96, 116-117, ¶¶26, 63,64. In the communication at issue, West-Helmle stated to Professor Russell: "[a]s you know, I suffered a massive stroke 8 months prior to beginning work at the Denver DA's office. . . . The Denver DA's Office and Magistrate Annis knew of my stroke, and I was not afforded any special accommodations by anyone involved in this matter." *See* Opening Brief, at 34; ROA, Vol. V at 359.

Judge Moore correctly held that this communication did not constitute protected activity. ROA, Vol. VI at 237-238. As previously noted, West-Helmle never alleged discrimination on the basis of an alleged disability; nor did he even request an accommodation. Critically, rather than appropriately requesting an accommodation, which would operate prospectively and allow him to complete the requirements of the externship, *see, e.g., Dewitt,* 845 F.3d at 1316, West-Helmle instead waited until he had already failed the externship and then made this belated passing reference to his stroke in an effort to seek retroactive lenience. This Court has repeatedly rejected post-hoc requests for forgiveness like this one. *E.g., Profita v. Regents of the Univ. of Colorado*, 709 F. App'x 917, 918, 920-21 (10th Cir. 2017) (affirming the lower court's finding that "a request for 'retroactive leniency for . . . past misconduct . . . is not a request for a reasonable accommodation as a matter of law.'"); *Davila v. Qwest Corp.*, 113 F. App'x 849, 854 (10th Cir. 2004) (same);

*Dewitt,* 845 F.3d at 1316 (same).

Lastly, West-Helmle alleges that Judge Moore "never addressed" West-Helmle's argument that he was prohibited from taking another externship after the Fall 2017 term. *See* Opening Brief, at 35. This is a blatant misrepresentation of the record. Judge Moore explicitly considered, and appropriately rejected, West-Helmle's argument pertaining to his ability to pursue additional externships. ROA, Vol. VI at 240 (finding that West-Helmle failed to develop the factual basis for this argument, failed to show that being excluded from additional externships was inconsistent with DU's policies or that the policies were not equally applied to other law students, and failed to establish that the action was sufficiently adverse to support a retaliation claim); *see also Lail v. Apfel*, 1999 WL 147305, at *2 (10th Cir. Mar. 18, 1999) (ordering the plaintiff's counsel to show cause why monetary sanctions should not be imposed for his blatant misrepresentations of the record) (unpublished).

While DU did not permit West-Helmle to take an additional externship after he received the grade of No Pass for the Fall 2017 externship, it is undisputed that West-Helmle remained free to pursue additional work with legal employers through paid internships or through volunteer work. *E.g.*, ROA, Vol. VI at 104-105, ¶41. Accordingly, West-Helmle's argument boils down to nothing more than a complaint that he was not permitted to engage in his *preferred* type of coursework (*i.e.* an externship) after he failed his Fall 2017 externship. This Court has rejected similar arguments where employees have alleged that they suffered an adverse action by virtue of their employer not allowing them to work on their preferred type of assignment. *E.g., Stover v. Martinez*, 382 F.3d 1064,

1070-71 (10th Cir. 2004) (holding that the non-selection of the plaintiff for special assignments was not an adverse employment action absent evidence that it amounted to a significant change in her employment status).

Similarly, as Judge Moore noted, West-Helmle had been rejected from the additional externship positions for which he had applied before learning that DU would not permit him to take an additional externship. *See* ROA, Vol. VI at 99-101, ¶¶31 (noting that West-Helmle did not receive an externship with the Colorado Springs District Attorney's Office due to the fact that he had a prior felony conviction), ¶36.. He also offered no evidence that would undermine DU's non-discriminatory reason for not allowing him to take an additional externship (*i.e.* the fact that he received a failing grade during his Fall 2017 externship). *See, e.g.*, ROA, Vol. VI at 104-105, ¶41. Nor did West-Helmle present any evidence that DU acted inconsistently with its policies or that it failed to apply its policies equally to non-disabled students. *E.g.*, ROA, Vol. VI at 240.[21] Accordingly, Judge Moore properly rejected West-Helmle's arguments and granted DU's Motion for Summary Judgment.

### 3. Judge Moore's Order Imposing Sanctions Against West-Helmle Was Not an Abuse of Discretion.

West-Helmle's final argument is a cursory complaint about Judge Moore's imposition of a $5,000 sanction against West-Helmle. West-Helmle devotes less than half a page of his brief to addressing Judge Moore's sanctions order and raises only the

---

[21] Indeed, despite falsely claiming that Judge Moore "never addressed" his argument, West-Helmle presents no other challenge to this portion of Judge Moore's ruling. Opening Brief, at 35.

perfunctory assertion that Judge Moore abused his discretion in sanctioning West-Helmle because West-Helmle "merely followed the law when it comes to his Objections and twice filed Motion for Recusal of the Judge" and was "countering the judge's possible wrongdoing." Opening Brief, at 35-36. By failing to provide any actual substantive argument, citation to the record, or caselaw to substantiate his claim that Judge Moore erred in imposing sanctions, West-Helmle fails to adequately raise this issue for review on appeal. *See, e.g., Vizcarrondo-Gonzalez*, 2024 WL 3221162, at *6.

Putting aside West-Helmle's failure to raise this issue, the $5,000 sanction that Judge Moore imposed was unquestionably deserved and far from an abuse of discretion. This Court has routinely acknowledged that courts possess the inherent power to impose sanctions when, as in this case, a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons. *E.g., Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991). On appeal, this Court reviews the District Court's imposition of sanctions for only an abuse of discretion. *E.g., Farmer v. Banco Popular of N. Am.*, 791 F.3d 1246, 1256 (10th Cir. 2015). A district court abuses its discretion in imposing sanctions when it: (1) fails to exercise meaningful discretion, such as acting arbitrarily or not at all; (2) commits an error of law, such as applying an incorrect legal standard or misapplying the correct legal standard; or (3) relies on clearly erroneous factual findings. *Id.*

Judge Moore imposed $5,000 in sanctions against West-Helmle after making specific findings that West-Helmle had: (1) engaged in vexatious behavior; (2) needlessly multiplied the proceedings by filing multiple groundless motions for recusal and reconsideration; and (3) persistently made inappropriate and disrespectful statements to

opposing counsel despite admonishments by the Court. ROA, Vol. VI at 244-246. Judge Moore emphasized that West-Helmle's behavior: "had not abated despite previous admonishment by this Court and the repeated rejection of his unfounded argument;" "r[ose] to a level the Court has rarely seen;" and forced Defendant to incur additional and unnecessary litigation costs. ROA, Vol. VI at 245-246. He similarly noted that West-Helmle had "fail[ed] to meaningfully address most of the conduct [DU] cite[d] in support of its Motion" for Sanctions. ROA, Vol. VI at 244.[22]

Judge Moore's imposition of sanctions was perfectly appropriate. Indeed, Judge Moore cited multiple examples supporting his findings regarding West-Helmle's vexatiousness and bad-faith litigation practices. This included West-Helmle's relentless filing of Motions for Recusal, Objections, and Motions for Reconsideration based upon nothing but nonsensical arguments and wild speculation, even after the Court had already rejected his groundless arguments. *See, e.g.*, Supp. App., at 73-84; ROA, Vol. IV at 69-70; ROA, Vol. IV at 71-73; ROA, Vol. IV at 74-82; ROA, Vol. IV at 131-147; ROA, Vol. VI at 140-160; ROA, Vol. VI at 186-187; ROA, Vol. VI at 208-211; ROA, Vol. VI at 214-219; ROA, Vol. VI at 220-223; *see also* ROA, Vol. IV at 243-249. Appellees addressed West-Helmle's groundless Motions for Recusal in Section VI(C) above and accordingly will not repeat that analysis here.

Judge Moore similarly substantiated his finding that West-Helmle engaged in disrespectful and abusive behavior towards opposing counsel despite repeated

---

[22] The Parties' briefing of the Motion for Sanctions confirms that West-Helmle was given proper notice and an opportunity to respond.

admonishment by the Court. *See* ROA, Vol. VI at 244-245. DU could devote the entirety of its Response Brief to detailing West-Helmle's repugnant behavior throughout the five years this case has been pending,[23] but the following examples are illustrative:

- West-Helmle made offensive ageist comments toward male defense counsel, stating: "[s]ome old men become too decrepit to change or think creatively," and referring to "[t]wo years of this bullshit." ROA Vol. IV, at 144;

- West-Helmle misogynistically referred to female defense counsel as "stupid" "dumb" and "confused" over a dozen times in a single filing. ROA Vol. III, at 364-375;

- West-Helmle suggested that female defense counsel was mentally handicapped, stating "[w]hile this Court likely sides with [female defense counsel]'s confusion, Plaintiff is embarrassed for her. Plaintiff is particularly generous with [female defense counsel]—he is disabled too. . . . Stupid is as stupid does." Supp. App., at 51, 52;

- West-Helmle made the outrageous and defamatory claim that defense counsel had been "sen[t] to rehab" and was "pop[ping] pills." ROA Vol. IV, at 144;

---

[23] West-Helmle has been equally disrespectful towards Judge Moore and Magistrate Judge Varholak, *see, e.g.,* ROA, Vol. IV, at 132-134, 137, 144-145; ROA, Vol. IV, at 268; 10th Cir. Dkt. 47-1, at 6-8. However, given that Judge Moore addressed only West-Helmle's conduct towards opposing counsel in his ruling, DU focuses on only that misconduct here.

- West-Helmle stated to defense counsel's paralegal that she was a "fool" and

  a "[d]ummy, dummy two by four." App. Vol. IV, at 279.[24]

Judge Moore correctly noted that Magistrate Judge Varholak had twice admonished West-Helmle regarding his disrespectful behavior, and West-Helmle only escalated in response. *See* ROA, Vol. VI at 245. During the first admonishment on October 25, 2022, Magistrate Judge Varholak stated:

> Mr. West-Helmle, I will caution you, in your pleadings as of late, you have become more and more sarcastic, and for lack of a better term, inappropriate in your pleadings. I've cautioned you about this before. I know you're proceeding pro se, but you have a law degree from the University of Denver . . . and I'm quite certain that they've explained the proper decorum in the courtroom before, and the pleadings with the sarcasm, it's not assisting the position you are attempting to make. And so I caution you on future pleadings to please avoid the sarcasm and other type[s] of comments and just focus on the legal issues.

ROA, Vol. IV, at 273-274. Notably, the majority of the examples of West-Helmle's misconduct that DU cited in the bullet point list above (as well as a slew of additional disrespectful and inappropriate attacks) came ***after*** this first admonishment from Magistrate Judge Varholak. Thus, during Magistrate Varholak's second admonishment to West-Helmle on December 13, 2023, he noted that the Court had already previously cautioned and warned West-Helmle about his disrespectful behavior and that West-Helmle had continued to engage in this misconduct "multiple times." Supp. App., at 54-56, 63-65, 68-69. Magistrate Judge Varholak further stated that West-Helmle's behavior was "not

---

[24] West-Helmle's inappropriate attacks upon defense counsel and others were so egregious that counsel for Appellee Professor Russell submitted a filing identifying and categorizing the disrespectful and outrageous attacks West-Helmle made in his filings against more than a dozen different individuals and institutions. (10th Cir. Dkt. 47-4).

acceptable" and "going to lead to sanctions." *Id.* (further admonishing West-Helmle for persistently raising groundless attacks on defense counsel and the Court which were based upon nothing more than West-Helmle's "wild speculation"). Undeterred, within two and a half weeks, West-Helmle filed another motion with the same false and defamatory attacks on defense counsel he had raised previously. Supp. App., at 93-94; *see also* Supp. App., at 90 (West-Helmle declaring on December 31, 2023 that he was "utterly undeterred").[25]

For these reasons, Judge Moore did not abuse his discretion in sanctioning West-Helmle for his relentless bad-faith and abusive litigation practices. Indeed, Judge Moore correctly cited the legal standard for the imposition of sanctions and supported his rationale with a multitude of citations to the record providing examples of West-Helmle's vexatiousness and his inappropriate attacks upon defense counsel. ROA, Vol. VI at 244-246; *see also Mellott v. MSN Commc'ns, Inc.*, 513 F. App'x 753, 754 (10th Cir. 2013) (affirming sanctions).

## VII.    CONCLUSION

For the reasons stated above, this Court should affirm the District Court's Order granting DU's Motion to Dismiss, its Orders denying West-Helmle's Motions for Recusal, its Order striking portions of West-Helmle's Response to DU's Motion for Summary Judgment, and its Order granting DU's Motion for Summary Judgment and Motion for Sanctions.

Appellees further request that this Court award just damages and double costs

---

[25] West-Helmle's abusive rhetoric did not end at the District Court level. *See, e.g.,* Opening Brief; 10th Cir. Dkt. 47-1.

pursuant to Fed. R. App. P. 38 because West-Helmle's appeal was frivolous. Fed. R. App. P. 38; *see also Lipin v. Wisehart*, 760 F. App'x 626, 637 (10th Cir. 2019) (inviting a motion for sanctions after finding that the pro se appellant's appeal was "wholly without merit," and full of "unsupported, abusive, and irrelevant" arguments).

An appeal is frivolous under Rule 38 when "the result is obvious, or the appellant's arguments of error are wholly without merit." *Braley v. Campbell*, 832 F.2d 1504, 1510 (10th Cir. 1987) (en banc). "Just damages" under Rule 38 may include attorney fees, *In re Nat. Gas Royalties Qui Tam Litig.*, 845 F.3d 1010, 1026 (10th Cir. 2017), and the Court may also "award a fixed amount reflecting an appropriate penalty rather than a precise sum based upon proof of the appellee's actual attorney fees," *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1581-82 (Fed. Cir. 1991). The fact that a litigant is pro se does not insulate him from the imposition of sanctions under this rule. *See, e.g., Wheeler v. Comm'r*, 521 F.3d 1289, 1291-92 (10th Cir. 2008).

As detailed above, the arguments that West-Helmle raised on appeal were frivolous, unsupported, and primarily nothing more than regurgitated material from his District Court filings rather than properly developed appellate argument. Accordingly, Appellees request the imposition of sanctions pursuant to Rule 38.

## VIII.     STATEMENT REGARDING ORAL ARGUMENT

Appellees do not request oral argument. Appellees do not believe that oral argument will materially assist the Court in resolution of this appeal.

**Dated: January 22, 2025**

Respectfully submitted,

*s/ Jim Goh*

**Jim Goh**
E. Rayner Mangum
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
1801 Broadway, Suite 529
Denver, CO  80202
Telephone:  720.343.7570
Facsimile:  720.343.7573

**ATTORNEYS FOR APPELLEES,
UNIVERSITY OF DENVER, VIVA
MOFFAT, AND ALEXI FREEMAN**

## CERTIFICATE OF COMPLIANCE

Pursuant to Rules 32(a)(7)(B)(i) and 32(g)(1) of the Federal Rules of Appellate Procedure, I hereby certify that this Appellees' Response Brief was produced in Times New Roman 13-point type and contains 12,956 words (based on Microsoft Word processing system word count function), excluding the sections properly excluded pursuant to Fed. R. App. P. 32(f).

**Dated: Denver, Colorado**
**January 22, 2025**

**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**

*s/ Jim Goh*
**Jim Goh**
**Rayner Mangum**
1801 Broadway, Suite 529
Denver, CO  80202
Telephone:  720.343.7570
Facsimile:  720.343.7573

**ATTORNEYS FOR APPELLEES,
UNIVERSITY OF DENVER, VIVA
MOFFAT, AND ALEXI FREEMAN**

## CERTIFICATE OF PRIVACY REDACTIONS
## PURSUANT TO 10TH CIR. R. 25.5

I hereby certify that, per the Court's Rules, all required redactions have been made

(SSNs, birth dates, financial account numbers, etc.) to the Appellees' Response Brief.

**Dated: Denver, Colorado**
**January 22, 2025**

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*s/ Jim Goh*
**Jim Goh**
**Rayner Mangum**
1801 Broadway, Suite 529
Denver, CO  80202
Telephone:  720.343.7570
Facsimile:  720.343.7573

**ATTORNEYS FOR APPELLEES, UNIVERSITY OF DENVER, VIVA MOFFAT, AND ALEXI FREEMAN**

## CERTIFICATE REGARDING HARD COPIES OF BRIEF

Pursuant to 10th Cir. R. 31.5, the undersigned hereby certifies readiness to submit

hard copies of the Appellees' Response Brief should the Court require the same.

**Dated: Denver, Colorado**
**January 22, 2025**

**CONSTANGY, BROOKS, SMITH &**
**PROPHETE, LLP**

*s/ Jim Goh*
**Jim Goh**
**Rayner Mangum**
1801 Broadway, Suite 529
Denver, CO 80202
Telephone: 720.343.7570
Facsimile: 720.343.7573

**ATTORNEYS FOR APPELLEES,**
**UNIVERSITY OF DENVER, VIVA**
**MOFFAT, AND ALEXI FREEMAN**

## CERTIFICATE OF VIRUS SCAN

I hereby certify that, per the Court's Rules, a virus-detection program was run on the electronic Appellees' Response Brief, and no virus was detected. The program used was CrowdStrike Falcon malware.

**Dated: Denver, Colorado**
**January 22, 2025**

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*s/ Jim Goh*
**Jim Goh**
**Rayner Mangum**
1801 Broadway, Suite 529
Denver, CO 80202
Telephone: 720.343.7570
Facsimile: 720.343.7573

**ATTORNEYS FOR APPELLEES, UNIVERSITY OF DENVER, VIVA MOFFAT, AND ALEXI FREEMAN**

## CERTIFICATE OF COUNSEL REGARDING SEPARATE BRIEFS

Pursuant to 10th Cir. R. 31.3(B), Appellees University of Denver, Viva Moffat, and Alexi Freeman believe the issues presented by West-Helmle in this appeal in connection with DU are separate and distinct from the issues raised against the other Defendants-Appellees (who are separately represented), such that filing separate briefs is warranted.

**Dated: Denver, Colorado**
**January 22, 2025**

**CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**

*s/ Jim Goh*
**Jim Goh**
**Rayner Mangum**
1801 Broadway, Suite 529
Denver, CO 80202
Telephone: 720.343.7570
Facsimile: 720.343.7573

**ATTORNEYS FOR APPELLEES, UNIVERSITY OF DENVER, VIVA MOFFAT, AND ALEXI FREEMAN**

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on January 22, 2025, I electronically filed the foregoing Appellees' Response Brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit through the Court's CM/ECF system.

I further certify that the participants in this case are registered CM/ECF users, and service will be accomplished by the appellate CM/ECF system.

> **Dated: Denver, Colorado**
> **January 22, 2025**

> **CONSTANGY, BROOKS, SMITH & PROPHETE, LLP**
>
> <u>*s/ Jim Goh*</u>
> **Jim Goh**
> **Rayner Mangum**
> 1801 Broadway, Suite 529
> Denver, CO 80202
> Telephone: 720.343.7570
> Facsimile: 720.343.7573
>
> **ATTORNEYS FOR APPELLEES, UNIVERSITY OF DENVER, VIVA MOFFAT, AND ALEXI FREEMAN**