# IN THE UNITED STATE COURT OF APPEALS
## FOR THE TENTH CIRCUIT

Case No. 24-1340

ETHAN WEST-HELMLE,

Plaintiff/Appellant

v.

DENVER DISTRICT ATTORNEY'S OFFICE, et al.

Defendant/Appellee

RECEIVED
United States Court of Appeals
Tenth Circuit

FEB 18 2025

CHRISTOPHER M. WOLPERT
Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
THE HONORABLE JUDGE RAYMOND P. MOORE
CIVIL ACTION NO. 19-cv-02304-RM-STV

**REPLY BRIEF OF APPELLANT**

Respectfully submitted,

*s/ Ethan West-Helmle*

Ethan West-Helmle, *pro se*
1522 Osceola Street, Denver, CO 80204
Phone: (310) 467-0468
Email: ethanvdenver@gmail.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES................................................................iii

STATEMENT IN RESPONSE TO THE OPPOSITION.............................1

RESPONSE TO OPPONENTS' STATEMENT OF FACTS.....................3

ARGUMENT.................................................................................8

   1. MOTIONS TO DISMISS
      A. DUE PROCESS "Stigma Plus" VIOLATION...........................8
      B. The Court wrongfully dismissed Rehabilitation Act, ADA
         Discrimination and Failure to Accommodate against all
         Defendants because Plaintiff was not incompetent.............9
      C.  The Court wrongfully dismissed Civil Conspiracy against
         the DU Employees and ADA Retaliation / Rehabilitation
         Act against the DA's Office because parties answered......13
           - THOMAS RUSSELL.............................................................14

   2. JOINDER
      The Court wrongfully denied joining Magistrate Annis for a
      Section 1983 claim because Plaintiff filed a timely Motion
      which was denied *without prejudice*............................................17

   3. SUMMARY JUDGEMENT/SANCTIONS
      - SMJ
      Court wrongfully disposed of the Rehabilitation Act
      against DU at summary judgment.................................21
      - SANCTIONS
      The Court should not impose sanctions on *pro se*
      litigant who exercised his right to recuse for injustice.............22

CONCLUSION..........................................................................27

CERTIFICATE OF COMPLIANCE..............................................28

CERTIFICATE OF SERVICE.....................................................29

# TABLE OF AUTHORITIES

## CASES

*Ctr. for Individual Rights v. Chevaldina*, 2018 U.S. Dist. LEXIS 89847, 46 (S.D. Florida)……………………………………………………….26

*Franklin v. Kan Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005)……12

*Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) ………………18

*King v. Fleming*, 899 F.3d 1140, 1145 (10th Cir. 2018)……………………..12

Liteky v. United States, 510 U.S. 540, 555 (1994)……………………….…20

*Newman v. State of Ind.*, 129 F.3d 937, 942 (7th Cir. 1997)………………18

*N.Y. Marine & Gen. Ins. Co. v. Boss Interior Contrs., Inc.*, 2021 U.S. Dist. LEXIS 17961, at *3 (S.D. Fla. Jan. 29, 2021)…………………….....12-13

*Prakel v. Indiana*, 100 F. Supp. 3d 661, 677 (S.D. Ind. 2015)…………….18

*Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 528 (5th Cir. 2002)………………………………………………………………..25

*Sassower v. Field*, F.2d 75, 80 (2d Cir. 1992)………………………….....25

*Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1197 (5th Cir. 1988)……………………………………………………………25

*Syngenta Crop Prot., Inc. v. E.P.A.*, 222 F.R.D. 271, 273 n.2 (M.D.N.C. 2004)………………………………………………………………….13

*Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1173 (D.C. Cir. 1985)………25

*Zaldivar v. City of Los Angeles*, 780 F.2d 823, 831 (9th Cir. 1986)..........25

## STATUTES

28 U.S.C. § 1927...............................................................................24

## GENERAL STATEMENT IN RESPONSE TO THE OPPOSITION

Jim Goh (Mr. Goh) continues bad mouthing about Appellant to this Court in short pieces of statements, weaved together, and directed at the ill will of overcoming a disabled litigant. Opposing Counsel has no respect for the disability. It was Russell who first put all of these statements together over the past five years to present to the Trial Court.

The vast majority of University of Denver's (DU) accusations are untrue regarding Appellant's positions or stance. Many of these promulgations from DU are entirely false or misleading generally without picking all of this trash talk apart - piece by piece. Appellant believes that he has been a diligent, steadfast self-representative, and Appellant - although unpopular - is only doing his job. Appellant does not say anything hurtful to another unless it is <u>TRUE</u>.

Appellant has no more time to inform this Court about Mr. Goh and Rayner Mangum's wrongdoing while the other attorneys involved in this case have abuses of their own, having a field day with the disabled.[1]

---

[1] Russell became obsessed with destroying Appellant's reputation because he was overwhelmed with the grief of being held accountable. Russell evaded service of his subpoena - Russell ran. Russell closed down all of his classes for a week. He was ultimately served his subpoena, but then Russell filed a motion because he did not want to talk to Appellant. The Magistrate, and Judge Moore, say he need not testify to Plaintiff regardless of the previous courtroom occasion with Magistrate Varholak who ordered three (3) depositions to finalize Appellant's investigation of the Retaliation claim. Despite the ruling - Russell refused. Judge Moore agreed, knowing that legal professionals all do their duty. Russell has not proven to be much of a legal "professional." Instead, Russell bribed Appellant's private investigator (PI) to help him with the case even though PI recently testified to Russell's disfavor.

Judge Moore is not an appropriate judge for this case. Judge Moore has acted terribly toward Appellant - outright unacceptable discrimination - and Appellant responded fiercely. Every word DU cited correctly from Appellant was all in response to disdainful behaviors of another. Appellant has lost trust in the District level because Judge Moore has acted so against the law and rules. Appellant has been defenseless from the abuse of discretion Judge Moore has implemented here.

Appellant should not have been sanctioned for asking the judge twice be recused when Judge Moore's behaviors became enhanced with retaliatory misconduct. Appellant is simply holding himself together in DU's final push to demoralize him as a villain when, in fact, Appellant is the victim – he sued for good reason. DU attempts here to suggest to this Court that Appellant's current promulgations makes him a bad guy, deserving all the Defendants did to him. Appellant is an untrained advocate who should have been trained by now, but the Minnesota Bar decided not

---

Look at Matthew Hegarty (counsel for DA's Office) who refused to confirm with Appellant that one of the DA's email account was preserved. Hegarty explicitly refused to preserve the evidence because it takes too long - too much effort and expended resources. Appellant informed him that they had reached an impasse, and Appellant would need to pursue a hearing on that matter because Christine Washburn's (Appellant's supervising attorney) account was erased in its entirety within 30 days of being terminated by the office. Hegarty only preserved the evidence because he would surely have been ordered by the Magistrate to do so - not because he was playing fairly with the *pro se*, disabled litigant.

to license Appellant for extended periods of time. Those damages are additionally problematic when the victim was never licensed to begin with, and now, law school is already six (6) years past. Four years ago, this Bar Board said that they would likely have decided differently if it was not for Magistrate Mellissa Trollinger Annis (Annis) holding Appellant in contempt – even though we now know *she never did*.

Therefore, Appellant rises to the occasion and takes this opportunity to simply respond to the representations provided by opposing counsel on the merits of the issues presented. This case is not about the attorney's nastiness, so read further with no fear of malevolence from Appellant.

**APPELLANT'S RESPONSE TO OPPONENTS' STATEMENT OF FACTS**

"At both the mid-point of the semester and at the end of the semester, the DA's Office supervising attorney conducted a review with the Plaintiff, both of which were in turn provided to and examined by DU employees." [ECF 54, P6.] There was only a mid-semester review and my supervising attorney Christine Washburn was not there. Dustin Heard decided to hold Appellant back from participating in motions hearings. Appellant asked why, but was not provided with an answer. There were no issues presented at this meeting which Appellant could have sought improvement. There was never a final review … nobody ever contacted Appellant to sit for a

review. All of the issues provided to DU employee in Appellant's final examination were not truthful. [Vol. 5, P483-86.] Plaintiff was never warned that he would be subjected to the falsities of another at the DA's Office.

The other facts included in the County's Answer are largely summarizing the happenings at the DA's Office and DU and are largely unrelated to the claims against the County or the Magistrate. Ultimately, these facts are written by one who has misinterpreted the facts of this case as it relates to others.

The County states DU claims Appellant filed a "motion for the joinder of Magistrate Annis." *Id.* at 10. "[D]istrict court denied this motion because Plaintiff failed to comply with the relevant local rules." *Id.* The procedural facts do not state the original joinder was within the timing permitted by the Court in the Scheduling Order, and it was Dismissed **without prejudice**. Then, the formal understanding of "without prejudice" is that the holding was not preclusive as Appellant understands, but the Court disagreed even though they filed an original holding well after the scheduling order deadline had passed.

"As grounds for the denial, the district court found … that the new alleged evidence did not demonstrate any nonjudicial actions by Magistrate Annis, and that most of Plaintiff's arguments had no legal or factual basis."

*Id.* at 10-11. The non-judicial acts which Appellant asserts were ALL facts provided by Magistrate Annis, and Appellant is not asking this Court to look to the trial Court's interpretation for guidance at a time when the trial Court abused its discretion, here.

Essentially, "the district court considered the [County]'s material facts be undisputed **for the purposes of its order granting summary judgment.**" *Id.* at 11. Therefore, the statement was not intended to be utilized outside of the motion for summary judgment, and Appellant did not appeal any Order of summary judgement pertaining to the County.

DU points out that "West-Helmle also applied for a position with the Jefferson County District Attorney's Office but was not selected for the position." [ECF 58, P7.] DU forgets to mention that Freeman emailed the JeffCo DA to convince him not to work with Appellant. This Court must read Appellant's Response to Motion for Summary Judgement. [Vol. 5, P478-533.]

Appellant "stated in his memorandum that 'Dustin failed me for my overall negative attitude and my behavior in 4C. He is correct that . . . I did not take responsibility for the chaos which occurred in the courtroom.'" [ECF 58, P7.] This is true - Appellant never caused any drama in the

Courtroom, so Appellant had nothing to take responsibility for. Appellant ain't nobody's *crazy*.

"Given that West-Helmle received a No Pass grade in the externship, **he was not permitted to take additional externships at DU**. ROA, Vol. V at 286-287." [ECF 51, P9.] This loss of benefit of studying on your feet in an office in exchange for class credit is substantial. This barring Appellant from exchanging credit for future possibilities is harmful to the student and against DU's Anti-Discrimination Policy. The company admits in their policies that Freeman's actions, knowingly taking the benefit from only the disabled student constitutes Retaliation.

DU promulgates never "did he ever allege that he had suffered from discrimination during his externship. *Id*. This is not true. I brought up my disability with Alexi Freeman at my mid-semester review. She testified that we spoke about issues regarding my disability as early as the summer because my Adams County externship was taking place. Thus, Appellant had put her on notice about the shenanigans in Courtroom 4C and expressed his concerns about maltreatment.

The Minnesota Bar admits that they would have come out differently if Magistrate Annis had not held Appellant in contempt. Annis never held

Appellant in contempt despite all of the "relevant facts" here in DU's Answer, saying she did. This defense is a confused defense.

DU wrongfully accuses Appellant: "West-Helmle alleging that Judge Moore had already retired from the federal bench and that he was *secretly conspiring* with Magistrate Judge Varholak against West-Helmle." [ECF 58, P15.] This is a lie and outright misrepresentation. DU cites to nothing in this paragraph. Appellant never accused this of anybody. "Judge Moore properly granted DU's Motion for Sanctions and sanctioned West-Helmle $5,000." *Id.* Appellant, *pro se*, was sanctioned for asking him to be recused twice. Judge Moore's mishandling of the first motion was the direct cause of the second – SAME result.

The character attacks in DU's statement of facts are entirely irrelevant to this appeal. Appellant lacks a response here because this is not a battle of popularity between a judge and a *pro se*, disabled litigant. Thus, Appellant will not be "blamed" for his **reactions** to a judge's mistreatment of the disabled.

## ARGUMENT

## 1. MOTIONS TO DISMISS

### A. Whether the Stigma Plus violation was properly dismissed early *with prejudice* when Appellant's Complaint was only partially considered by the Trial Court.

The DA's Office says, the "court should show great respect for the [DU] faculty's professional judgment and cannot override school's decision 'unless it is such a substantial departure from accepted academic norms' as to show the person responsible did not actually exercise professional judgment." [ECF 51, P26.] Appellant was the ONLY student to be removed from participation in another externship in DU history. Alexi Freeman (Freeman) turned her back on Appellant in violation of DU's Company policies, which demanded she refrain from this terrible behavior. It was Freeman's decision to withhold Appellant from participation even though she testified that this was a major benefit to Appellant. Freeman and Moffat colluded to do so without offering Appellant a reason. Freeman acted with deliberate indifference to Appellant's new disability. Appellant urges this Court to not see all that comes from DU professors and officials as believable and trustworthy. This Court must read Appellant's Response to Motion for Summary Judgement in order to gain the big picture here. [Vol. 5, P478-533.]

The Due process clause is clearly established law. Due process is a constitutional right. On the day that Plaintiff was fired by Heard and Ashley Morgan, they all three agreed that a failing grade was not appropriate with Appellant. Then, they recommended a failing grade anyway. The recommendation was based on 4 substantial lies of which Appellant was not on notice. Appellant was never offered an opportunity to respond to any complaints. This office was particularly abusive - bad mouthing, rumors, lies and laughs. Appellant just had the most wonderful experience in Adams County just prior to this. Let's not forget what Olivia Larson said about her experience in 4C and the DA's Office. Appellant ditto's every word.

Please look at this pleading liberally and remember the *pro se* status of the author - Appellant had never written a complaint before this one. Then, decide if the due process stigma plus claim could move forward rather than dismissed ***with prejudice***.

### B. Whether the ADA Discrimination, Failure to Accommodate and Rehabilitation Act were properly dismissed because Appellant was not identified as disabled by the Trial Court even though the medical reports say Appellant is a disabled victim of stroke.

The County, unsupported by law, states brazenly, "There is no legal authority which permits a plaintiff to substitute facts as alleged in a post

9

judgment motion for the facts that were presented in the complaint which is the subject of the appeal." ECF 54, P14. Appellant's Statement of Facts are all relevant to the holdings in this case overall. There is no legal authorities which outright denies the acceptance of a *pro se* Opening Brief. All of these FACTS in Appellant's statement are true.

Then, the County says, "appeal is often unclear, and it is impossible at times to determine to which defendant or to which of the various Complaints Plaintiff is referring." *Id.* at 16. Appellant is asking the Court to decide whether he was at any time during 2017-2018 disabled after the occurrence of ischemic stroke. If Appellant was disabled, then according to the trial Court's reasoning, these claims affected by dismissal should be overturned. This includes ADA Discrimination and Failure to Accommodate against the DA's Office and the County, and Count 4 Rehabilitation Act for the County, DU and DA's Office.

The County states without support from the record: "While it is undisputed that Plaintiff suffered a stroke, a stroke in and of itself does not necessarily qualify as a disability under the ADA – much more factual support is required, and those additional facts were not pled by Plaintiff in his complaint." *Id.* at 18. Appellant's stroke and the subsequent medical reports - ATTACHED TO THE COMPLAINT - absolutely qualifies Appellant

to be disabled. The County just fails to acknowledge Appellant's relevant medical reports.

The DA's Office argues that the third element fails for Discrimination claim. Appellant disputes this promulgation generally. DA's Office adds that "Plaintiff already attributed his exclusion from Courtroom 4C to Magistrate Annis alone." [ECF 51, P27.] This is not a promulgation Appellant has asserted to the DA's Office. This is merely DA's narrow view at the complaint's isolated short plain statements. DA is forming an opinion on cherry picking particularity. The complaint should be viewed in its entirety, especially the attached medical record.

The DA's Office was dismissed because of his mental capacity - Plaintiff was not dumb enough to be disabled. The DA's Office "distilled" this holding as such. [ECF 34, P13.] Thus, there was no issue with the third element.

DU says Appellant adds "the conclusory, unsupported statement that the District Court 'wrongfully dismissed' his discrimination and failure-to-accommodate theories." [ECF 58, P16.] Appellant merely asks if he should be considered disabled at the time his externship occurs. Otherwise, the claim would have survived. So, DU is right - Appellant does accuse this Court of wrongfully dismissing these two claims. Plaintiff never forgot about

the Rehabilitation Act. DU claims that "West-Helmle's Third Amended

Complaint ... was proceeding as against DU with solely a single theory:

retaliation under the Rehabilitation Act." *Id.* at 16-17. The Third Amended

Complaint - on its face - does not forget about Mr. Goh and his clients.

Indeed, the Fourth Amended Complaint, moved to join Annis, the claims

are still there against them - for a reason. Appellant never gave up in his

fight for justice.

"District Court correctly found that West-Helmle failed to establish:

(1) that he had suffered any adverse actions, ROA, Vol. VI at 238-242; (2)

a causal connection between any adverse actions and his alleged

protected activity, id. at 242; and (3) any evidence to undermine the

legitimate, non-discriminatory reasons that DU offered for the challenged

actions to establish pretext." *Id.* at 19-20. Appellant has already

promulgated and the DA's Office distilled the reason for the discrimination

dismissal was because Appellant mental capacity was too strong.

Therefore, the causation element was held by the Court in response

to the Motion for summary judgement for the Retaliation claim below.

Causation was never litigated in the district court for discrimination. Here,

DU wrongfully attempts to mesh the Summary judgment into this dismissal.

### C. Whether the Trial Court properly dismissed Civil Conspiracy against the DU Employees and ADA Retaliation

**/ Rehabilitation Act against the DA's Office when the parties already submitted an Answer.**

### Retaliation

The DA promulgates: "Plaintiff nevertheless contends the fact the DA's Office answered this theory in his 2AC meant it was precluded from moving to dismiss this theory when he further amended his Complaint with the 3AC. **Not so**." [ECF 51, P20.] The DA's Office goes on to piecemeal together law which does not support the dismissal of the claim when an answer was submitted rather than a motion to dismiss. ***Franklin v. Kan Dep't of Corr.***, 160 F. App'x 730, 734 (10th Cir. 2005); ***King v. Fleming***, 899 F.3d 1140, 1145 (10th Cir. 2018); ***N.Y. Marine & Gen. Ins. Co. v. Boss Interior Contrs., Inc.***, 2021 U.S. Dist. LEXIS 17961, at *3 (S.D. Fla. Jan. 29, 2021); ***Syngenta Crop Prot., Inc. v. E.P.A.***, 222 F.R.D. 271, 273 n.2 (M.D.N.C. 2004).

The Rehabilitation Act will come into play with all ADA claims which survive. The Rehabilitation Act claim was also killed because Appellant is smart.

### Civil Conspiracy

Therefore, the Retaliation Claim and the Civil Conspiracy claim should both be remanded to the trial court because the claims were all

submitted as answers to the Third Amended Complaint and then dismissed *sua sponte*.

DU argues that Appellant should have included the Conspiracy claim in his objection. Appellant included the conspiracy claim - which was answered to - in his Certification for interlocutory appeal. The question remains as to whether their answer precludes dismissal at this early stage.

Therefore, the Defendants DU, Freeman and Moffat can change their story, but the record is clear - they all ANSWERED. Again, just like the DA's Office response, this defendant has danced around the issue that the trial Court caused when they slipped these claims under the rug. The law seems to prevent this sort of **wrongdoing** - whether the Court's or that of opposing counsel. "DU could have raised the same arguments in a motion under Fed. R. Civ. P. 12(c)," but it did not. *Id.* at 23.

**Thomas Russell**

"Thomas Russell was the only Defendant to move for dismissal of the Civil Conspiracy claim against him." [ECF 63, P4.] Here, Russell points this out repeatedly to separate himself from his co-conspirators because they both answered. This claim against Russell was not an expected reaction to his wrongdoing. Russell's real-time reaction to this case was to run, hide, cancel his professional responsibilities - Russell has obsessed over the

implications of this claim against him. Appellant knows this case against Russell, despite the merits of the newly stated claim, is not whether Appellant stated a claim or not. This case against Russell was meshed into a sweeping dismissal of the second round of Motions to Dismiss. Russell's claim was dismissed due to no "unlawful act" because their conspiracy was in support of the DA's Office, and Appellant failed to state a claim against the DA's Office who also answered to the Retaliation.

The dismissal against Russell is under no other analysis than: Can the conspirator claims move forward because they were dismissed for reasons which the rules do not support? If the Retaliation claim against the DA's Office should not have been dismissed procedurally, then the conspiracy claim was dismissed on the wrong premise regardless of whether the conspirator answered or not.

Russell promulgates that Appellant waives his right to appeal this claim. Russell was never Appellant's professor nor does he have any idea of what Appellant studied in law school or focused his attention. Russell speaks of a "case, similar to Mr. West-Helmle's claims here, involved an attorney representing himself, **pro se**." *Id.* at 7. Plaintiff is *pro se* but he is not now nor has he ever acted as a professional attorney. This is an attempt to guide this Court into treating Appellant more stringent than any

other *pro se* filer. Appellant's educational experience was stunted and his professional career ended because of these defendants collectively. Appellant has never forgotten about this particular defendant, and Appellant apologizes to this Court for offending the procedural mishaps at times throughout this case. Appellant meant no further detriment to himself for the treatment of his own claims.

"Mr. West-Helmle confirmed that he was satisfied with Magistrate Varholak's dismissal of the claims against Prof. Russell: 'Plaintiff agrees with the Court regarding the dismissal of the breach of contract and conspiracy claims.'" *Id.* at 8. This was not a representation of anything more than an amateur negotiation with the Court of which Appellant had no first-hand knowledge at this point. Appellant had no business to negotiate with a Court and should refrain from doing so in the future. Appellant wanted to recover the Retaliation claim against the DA's Office since Judge Moore just himself ordered them to Answer. Appellant was never willing to "give up" on any Defendant and never specified a voluntary dismissal against Russell specifically. Simply look at what Appellant said - Judge Moore never recognized this statement as voluntarily moving the Court to do anything.

Russell states all "was not lost on Judge Moore that Mr. West-Helmle failed to submit any opposition to the dismissal of claims against Prof. Russell." *Id.* at 15. There is no citation sentence for the rest of this paragraph, and Appellant is lost as to what Russell speaks of here.

## 2. JOINDER

**Whether the Trial Court properly denied joining Magistrate Melissa Trollinger Annis (Magistrate Annis) for a Section 1983 claim for being too late when Plaintiff filed a timely Motion which was denied *without prejudice*.**

Appellant believed, (1) it "would be best practice" to first issue discovery requests before seeking leave to amend and because (2) and **he desired to "clear his name."** ECF 54 at 20. "Plaintiff's ... desire to 'clear his name' was good cause, the district court found that this was insufficient good cause to permit an **untimely** amendment to the complaint." *Id.*

"Plaintiff had not overcome Magistrate Annis's judicial immunity." *Id.* However, this issue presented was not regarding whether the Magistrate is immune from prosecution for non-judicial acts. A magistrate can state they never acted in any judicial manner with no judicial acts related to Appellant's matter, but then the judge is no longer judicially immune from Appellant's matter. The facts supporting this Motion for Joinder was never litigated with regard to immunity, so thus, the appeal is not regarding Magistrate Annis's immunity here.

17

The County claims that "DCJ was entitled to judicial immunity [because] it became clear that Plaintiff's factual allegations against DCJ arose solely from Magistrate Annis' conduct." *Id.* at 26. The Trial Court said in response to the Retaliation Claim:

> "Plaintiff suffers ongoing emotional distress caused by Annis's off-the-job communications with DA's Office. Because it is now clear that the DCJ is being sued solely for the actions of Annis, who has absolute immunity, the DCJ is entitled to absolute immunity as well ... Even if the DCJ <u>were not absolutely immune</u>, Plaintiff has fallen well short of establishing the causation element."

[Vol 3, P712.] This claim was permitted to go forward from motions to dismiss because the County was found not to be immune. The Trial Court found that immunity was personal to Annis. In *Prakel*, the Court was on point to the facts of this case.[2] [Vol. 2, P341.]

Plaintiff sees Judge Moore's mention of immunity here just to double down on the causation which served as the element to kill the claim. These off-the-cuff statements regarding immunity should be held no further than the claim of Retaliation. Appellant did not appeal this Retaliation claim against the County. Appellant does not concede to the immunity issue

---

[2] "[J]udicial immunity is a personal defense reserved for individuals." *Prakel v. Indiana*, 100 F. Supp. 3d 661, 677 (S.D. Ind. 2015); see *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006) ("Official immunities (judicial, legislative, absolute, qualified, quasi, and so on) are personal defenses designed to protect the finances of public officials whose salaries do not compensate them for the risks of liability under vague and hard-to-foresee constitutional doctrines. That justification does not apply to suits against units of state or local government, which can tap the public fisc."); *Newman v. State of Ind.*, 129 F.3d 937, 942 (7th Cir. 1997) ("[I]t is to spare judges from shrinking from doing their duty out of fear of being sued that the doctrine of absolute judicial immunity was devised.").

regarding the County, as well as Magistrate Annis, because these new facts have never been presented for a determination of immunity as of yet.

**The Color of Law**

Magistrate Annis acted under the color of law while violating Appellant's rights, adversely barring Plaintiff from her Courtroom by way of private, personal conversations with the Denver DA's even though she said she had no reason to speak of Appellant. Vicious gossip can do harm. Now, Magistrate Annis claims Appellant was not barred from her Courtroom. This fact is undisputed - the Magistrate said it - not Appellant.

Moreover, Magistrate Annis's newfound stature convinced the Minnesota Bar Association that she had held Appellant in contempt for terrible behavior and thus barred him - the *unusual* acts a judge would not take against a student unless ***he is*** **_bad_**. Appellant agrees that his behavior was never poor or disrespectful to the clerks, judge, or defendants while conducting matters in the Court. Appellant loves court and trial.

In November 2022, Magistrate Annis claims there was not bad behavior in her Court regarding Appellant, which is why he was never held in contempt at all. Before moving the Court on the same matter, Appellant served a Request for Admissions to Annis to confirm the information previously testified to by Annis in her discovery response of November

2021. This Motion "Dismissed *without prejudice"* gave notice to Magistrate

Annis, and Appellant complied with Rule 15(c). Appellant is astonished the

opposing counsel simply regurgitates what the Court said and does not at

all address, or mention, the issue presented on appeal. The issue is:

> "Whether the Trial Court properly denied joining Magistrate Melissa
> Trollinger Annis (Magistrate Annis) for a Section 1983 claim for **being
> too late when Plaintiff filed a timely Motion which was denied
> *without prejudice*.**"

Appellant appeals as to whether the first motion put the Magistrate on

notice, and whether Plaintiff otherwise stated a claim against Magistrate

Annis within his multiple factual additions to the Amended Complaint. [Vol.

3, P83-85.] Should the procedural mishaps of the *pro se* disabled litigant

render them unable to continue with a claim that was dismissed <u>without</u>

<u>prejudice</u> originally? Appellant must have an answer to this issue because

this "lateness" was the reason Appellant was unable to bring the claim

which was mindfully, timely filed.

Thus, this claim should be reversed and remanded because the

Court decidedly tricked Plaintiff into believing that he is unable to ask again

for a joinder even though it dismissed it *without prejudice* the first time,

having acknowledged the claim despite the Court's otherwise confusion.

[Vol. 3, P78-79.] Annis admits Appellant otherwise stated a claim, asking

for the Court to use its discretion to deny the claim. [Vol. 3, P42.] Here, the Court abused its discretion.

### 3. SUMMARY JUDGEMENT AND SANCTION

**Whether the Summary Judgement and Monetary Sanction were VOID orders as a matter of the law when Judge Raymond P. Moore (Judge Moore) subjectively answered the Section 144 Motion for Recusal rather than addressing the submitted Affidavit at all.**

Both the Summary Judgment and the Sanction are VOID as they were both decided in the same holding. These two decisions followed closely after Judge Moore's explicit refusal to address the Affidavit presented for his recusal.

#### DU Summary Judgement

DU states, "It is well-settled that mere disagreement with an unfavorable ruling does not provide a sufficient basis for judicial disqualification. E.g., *Liteky v. United States*, 510 U.S. 540, 555 (1994)." [ECF 58, P25-26.] Plaintiff has not taken any position on the rulings of Judge Moore. Rather, he presented an affidavit in short, plain statements. This affidavit was entirely ignored and Judge Moore rather said that the Motion was conclusory - not the AFFIDAVIT.

"The remaining statements in West-Helmle's affidavit constitute nothing more than West-Helmle's unsupported, speculative, and conclusory assertions." *Id.* at 28. However, this Court should not simply

21

take opposing counsel's word for that. This Court must go back to the Record and decide for itself why these Affidavits were never seen by anyone other than Judge Moore. Judge Moore also did not want this Court to review his dismissals in an interlocutory appeal.

Finally, DU says, "Judge Moore correctly denied these Motions." *Id*. Appellant read the statute which states that the judge is not supposed to deny the motion without examination of the Affidavit. This Summary Judgment holding is void as a matter of the law as are the sanctions below.

DU goes on to say, "'Magistrate Annis' denial "is in line with exoneration of Plaintiff for the contempt charge,' despite the fact that DU did not allege that West-Helmle was held in contempt." *Id*. at 33. This statement is entirely false. In Russell's Final Grade Appeal Determination, he cites to the Magistrate excluding Appellant from her Courtroom. Freeman wrote to "Pioneer Cares" report that Appellant was "kicked out" of the Courtroom. So, the Minnesota Bar went specifically off what Dean Bruce Smith offered to them in order to find Appellant guilty of contempt. Dean Bruce Smith went off of what Russell said to Appellant.

**Sanction**

DU says, "Judge Moore *properly* granted DU's Motion for Sanctions and sanctioned West-Helmle $5,000." [ECF 58, P15.] This holding is VOID.

The passages portray DU supporting Judge Moore and his wrongdoing, while Appellant does not. Appellant believes Judge Moore has violated his due process rights, and Appellant is highly offended by this Judge's wrongdoing. Appellant is exhausted of the negative, unprovoked character attacks by opposing counsel. Appellant has never done anything or said to anyone anything that would be offensive and untrue. There is too much terrible behavior here for Appellant to begin to reply to it all individually.

Plaintiff argues that the two times he filed a motion for recusal were correct and proper under these circumstances. If the two motions are not inherently incorrect, then Appellant asks this Court to overturn the decision to sanction a *pro se* litigant. Otherwise, this holding is VOID under Federal law.

Then, Opposing Counsel speaks again of all of Appellant's alleged wrongdoing. DU states:

> "West-Helmle misogynistically referred to female defense counsel as "stupid" "dumb" and "confused" over a dozen times in a single filing. ROA Vol. III, at 364-375; West-Helmle suggested that female defense counsel was mentally handicapped, stating "[w]hile this Court likely sides with [female defense counsel]'s confusion, Plaintiff is embarrassed for her. Plaintiff is particularly generous with [female defense counsel]—he is disabled too. . . . Stupid is as stupid does."

*Id.* at 42. Appellant does not say things which must be presented in brackets to an Appellate Court. Opposing Counsel is filling in the blanks here to shed poor light on Appellant. Appellant has never been misogynistic, and he has great respect for women generally. Appellant has become really rather short with the opposing counsel overall. They are turning Appellant into a monster solely for the benefit of the abuse from Judge Moore. DU is blaming the victim in order for their clients to prevail.

**The Law on § 1927**

"Defendant seeks monetary sanctions against Plaintiff pursuant to 28 U.S.C. § 1927 and the Court's inherent authority." [Vol. 6, P244.] Judge Moore sanctioned Appellant for asking he be recused twice. Now, Appellant asks this Court not uphold this punishment because Appellant never acted against the rule of law. Appellant should not be punished for first-time mistakes.

District "Court's inherent authority includes the power to assess attorney fees when … filing groundless motions for recusal and reconsideration" take place. [Vol. 2, P244-45.] The Court failed to mention that the first motion was not responded to by the Opposing Counsel - the Court killed it *sua sponte*. "Moreover, Plaintiff subsequently proceeded to file yet another *unsubstantiated* motion for recusal, which the Court

rejected, followed by yet another Motion for Reconsideration." [Vol. 6, P245.] Here, the Court is punishing Appellant for bills which never accrued.

The majority rule is that *pro se* litigants who are not lawyers are not among those whom the statute reaches. Because § 1927 is strictly construed, unrepresented litigants are not deemed to be in the category of "other persons" admitted to conduct cases. See, e.g., *Sassower v. Field*, F.2d 75, 80 (2d Cir. 1992). Appellant is not admitted to conduct cases as the § 1927 statute requires. Only lawyers may, therefore, be sanctioned under the statute. *Smith Int'l, Inc. v. Texas Commerce Bank*, 844 F.2d 1193, 1197 (5th Cir. 1988); *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir. 1986); *Westmoreland v. CBS, Inc.*, 770 F.2d 1168, 1173 (D.C. Cir. 1985). *Procter & Gamble Co. v. Amway Corp.*, 280 F.3d 519, 528 (5th Cir. 2002) ("The sanctions orders … share two common, fatal flaws. First, the district court shifted fees and costs under § 1927 to the plaintiff rather than to its counsel").

"[T]he statute is clear that either an attorney or a person who is admitted to conduct cases may be sanctioned under § 1927. Because [Appellant] fits neither category, we conclude that § 1927 does not apply to *pro se* litigants." *Ctr. for Individual Rights v. Chevaldina*, 2018 U.S. Dist.

LEXIS 89847, 46 (S.D. Florida). Since Appellant's original application, in 2019, he is still not licensed by the Bar Association - six (6) years into his efforts for licensure. The six years of damages are still accruing additional time today - every day. The Minnesota Bar Association not only failed to "admit" Appellant - the Bar outright denied him admission for excessive time.

Judge Moore did not possess the inherent powers he speaks of on this day, in this case. Judge Moore failed to afford due process to Appellant on June 18, 2024, with his subjective ORDER [ECF 377.] Thus, this Order should be VOID. If not, then Appellant implores this Court to not punish him under a statute which was not intended for him. This punishment is appalling coming from the personal animosity of Judge Moore who clearly does not like facing recusal due to disabled Appellant.

This Court must inspect Appellant's second Affidavit and ask whether this Affidavit is baseless. [Vol. 6, P161-69.] If the Affidavit is not baseless, then this Court must overturn this sanction. There is protocol in proper procedure, and due process is violated here.

This Order for **$5,000 sanction** should be overturned.

## CONCLUSION

Therefore, Appellant asks this Court to return this case back to the District Court. However, Appellant implores this Court not to return his case to Magistrate Varholak or Judge Moore's Court. The abuses shall no longer continue, herein.

This Reply Brief is submitted on this 18th day of February, 2025,

> _s// Ethan West-Helmle_
> Ethan West-Helmle, _pro se_
> 1522 Osceola Street
> Denver, CO 80204
> (310) 467-0468
> Email:ethanvdenver@gmail.com

# CERTIFICATE OF COMPLIANCE

I, Ethan West-Helmle, hereby certify that:

This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 5,830 words, excluding the parts of the brief exempted by Fed. R. App. P. 32 (a)(B)(iii). (excluding the signature page.)

In preparing this certification, I relied on the word processing system used to prepare the brief.

\_\_s/ Ethan West-Helmle_____

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of February, 2025, a true and correct copy of this REPLY BRIEF OF PLAINTIFF-APPELLANT was filed with the Court in person and will be uploaded to CM/ECF system. I provided an electronic copy on this day to the following:

Jim Goh
Rayner Mangum
Dart Winkler
Edward Gorman
Paige Arrants
Andrew Ringel
Matthew Hegarty

_____/s/ Ethan West-Helmle_____
Ethan West-Helmle, *pro se*